LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
SCOTT J. STREET (State Bar No. 258962)
sstreet@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

BRIAN E. WATKINS (State Bar No. 190599)
bwatkins@brianwatkinslaw.com
BRIAN E. WATKINS & ASSOCIATES
925 B Street, Suite 402
San Diego, California 92101
Telephone: (619) 255-5930
Facsimile: (619) 255-5639

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.R. NEHAD, an individual, K.R. NEHAD, an individual, ESTATE OF FRIDOON RAWSHAN NEHAD, <br><br> Plaintiffs, <br><br> v. <br><br> NEAL N. BROWDER, an individual, CITY OF SAN DIEGO, a municipality, and DOES 1 through 10, inclusive, <br><br> Defendants. | **CASE NO. 15-CV-1386-WQHNLS** <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> (1) DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (FOURTH AMENDMENT); <br><br> (2) DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT); <br><br> (3) DEPRIVATION OF CIVIL RIGHTS (CAL. CIV. CODE § 52.1) <br><br> (4) ASSAULT AND BATTERY; <br><br> (5) NEGLIGENCE; AND <br><br> (6) WRONGFUL DEATH. <br><br> [DEMAND FOR JURY TRIAL] |

Plaintiffs S.R. Nehad and K.R. Nehad (the "Nehads") and the Estate of Fridoon Rawshan Nehad (the "Estate") (collectively, "Plaintiffs") allege as follows:

## INTRODUCTION

1. On April 30, 2015, Fridoon Rawshan Nehad ("Fridoon") was shot to death by Defendant Neal N. Browder. Browder was acting under color of authority, in his capacity as a San Diego police officer. Fridoon was unarmed.

2. The shooting was captured on a surveillance video owned by a private business named KECO, Inc. (the "KECO Video"). KECO has the video of the shooting and provided a copy to the San Diego Police Department ("SDPD").

3. Individuals have seen the KECO Video. One of them called the video "shocking" and stated that Browder appeared to shoot Fridoon "hastily," at a moment when Fridoon's walking cadence noticeably changed from normal to a near-stop.

4. Browder was wearing a body camera but it was not activated when the shooting occurred. On information and belief, he did not activate the body camera because he did not want anyone to see the shooting (he did not know about the KECO Video).

5. Based on accounts of individuals who have seen the KECO Video, Plaintiffs believe that Fridoon's shooting was unjustified. They bring this action for violation of their civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, as well as applicable state law.

6. Before filing this case, Plaintiffs tried to obtain the KECO Video from the SDPD, to no avail: the SDPD refused to provide the video and told Plaintiffs to file a lawsuit if they wanted to see it. Plaintiffs also tried to obtain a copy of the video from KECO, but KECO said it would only produce the video if it receives a subpoena.

7. Thus, on June 24, 2015, Plaintiffs filed this case and they sought leave to serve a subpoena for the video on KECO. Defendants agreed that Plaintiffs

should receive leave to serve the KECO subpoena and the parties are preparing a joint motion to that effect. Defendants also agreed to provide Plaintiffs with all the videos and documents from the SDPD's investigation of the shooting as soon as possible, pursuant to a protective order.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Pursuant to section 910 of the California Government Code, Plaintiffs filed administrative claims with the City of San Diego ("City"). The claims were denied on July 14, 2015, as the City failed to act on them within the 45-day time period.

## PARTIES, JURISDICTION AND VENUE

9. The Estate is Fridoon's probate estate. Under Section 377.20 of the California Code of Civil Procedure, the Estate has standing to bring claims for Fridoon's pre-death pain and suffering. For jurisdictional purposes, and since Fridoon's death occurred in California, the Estate resides in California.

10. Plaintiff S.R. Nehad is a United States citizen. She is Fridoon's mother and resides in San Diego, California. Plaintiff K.R. Nehad is a United States citizen. He is Fridoon's father and resides in San Diego, California.

11. Defendant Neal N. Browder is a United States citizen. He resides in Temecula, California.

12. The SDPD is an agency of Defendant City of San Diego, a municipality. The City is responsible for the actions of the SDPD and its officers.

13. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10 and therefore sue those unknown Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege said Defendants' true names and capacities when ascertained. Plaintiffs are informed and believe that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged herein, and that Plaintiffs' injuries were proximately caused by the acts and/or omissions of said fictitiously named

Defendants.

## JURISDICTION AND VENUE

14. This is a civil suit brought under the Civil Rights Act, 42 U.S.C. § 1983, for violations of Plaintiffs' rights under the United States Constitution. This Court has subject matter jurisdiction over the parties and this action pursuant to 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331. It has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 and principles of pendent jurisdiction.

15. This suit seeks compensatory and punitive damages against all Defendants as permitted by law.

16. Venue is proper in this Court because the events or omissions that gave rise to the causes of action herein occurred in San Diego, California, within the Southern District of California.

## FACTS

### A. Fridoon and His Family

17. Fridoon was born in 1973 and grew up in Afghanistan. He was an intelligent, kind, thoughtful and creative person. He had a loving and happy childhood. But it was interrupted by the Russian invasion of Afghanistan and the internal civil war after the Russians left.

18. The civil war pitted the Afghan government against groups called the Mujahideen (some of these groups would later form the Taliban). Fridoon was drafted into the Afghan army when he was a teenager. While serving, he was captured by one of the Mujahideen groups. He spent nearly two months in captivity and was only released after his mother met face-to-face with the kidnappers and pleaded for the release of her son.

19. Fridoon did not talk much about the war. He likely was tortured. The Mujahideen had a well-documented practice of torturing prisoners of war.

20. After his release, Fridoon still was in grave danger of persecution by the Mujahideen (which opposed the government). To save his life, his family got

him out of Afghanistan and into refuge in Germany. He was a teenager at the time.

21. Fridoon spent the next 14 years in Germany, isolated from his family. He saw his parents just a few times. He did not see his siblings (six sisters) at all.

22. In 1991, the Nehads immigrated to the United States, settling in San Diego. They became American citizens. Their daughters attended school and have jobs and careers in the U.S. in medicine, law and business. Fridoon finally joined them in 2003.

23. Fridoon suffered from Post-Traumatic Stress Disorder ("PTSD"). He also was diagnosed with schizophrenia and bipolar disorder.

24. Fridoon battled against his illnesses. He was intelligent, learning new languages (German and French) and taking classes on computer programming, linguistics and literature. He became a permanent resident of the United States and obtained a work permit. He tried to improve his life, but sometimes had manic episodes. He was arrested and, in 2008, went to jail for burglary.

25. Fridoon was loved. His family spent years and countless hours trying to help him cope with his PTSD and illness. At times, it was difficult.

26. Fridoon was receiving treatment for his PTSD and mental illness. But he still had manic episodes. During one episode, he became upset with his mother and sister, who called the police. The police recommended that the Nehads get a restraining order.

27. The police told the Nehads that getting a restraining order would help Fridoon get into a shelter in Oceanside, which he had visited. The Nehads trusted the police and followed their advice.

**B.** **Fridoon's Shooting**

28. On April 29-30, 2015, Fridoon was walking in downtown San Diego.

29. Officer Browder responded to a 911 call from an adult bookstore employee. He arrived at the store around midnight.

30. According to a KECO employee who saw the KECO Video, Fridoon

was walking in the alley behind the bookstore when Browder arrived in his police car. He was about 15 to 20 feet away from the police car when Browder stepped out of his car and, within seconds, fired his side arm, hitting Fridoon with at least one shot. Fridoon died later at UCSD Medical Center.

31. The KECO employee who saw the video, Wesley Doyle, provided a declaration about what he remembers about the KECO Video. Doyle said the shooting was "unprovoked" and "shocking." Browder did not take any time to communicate with Fridoon and did not use any other (non-deadly) measures against Fridoon. He did not even get into a police shooting stance. He appeared to shoot Fridoon "hastily," at a moment when Fridoon's walking cadence noticeably changed from normal to a near-stop. Doyle's declaration is attached to this First Amended Complaint as **Exhibit "A"** and incorporated by reference.

### C. The SDPD Cover-Up and the KECO Video

32. Fridoon was not armed. Nonetheless, the SDPD tried to "spin" the story against Fridoon, falsely suggesting to his family and the media that he had a knife. The SDPD also falsely claimed that Fridoon was threatening Browder when, in fact, Fridoon was shot at a distance of at least 15 feet and just after Browder arrived at the scene.

33. Browder was wearing a body camera that night. But it was not activated at the time of the shooting. It should have been: the SDPD's body camera policy required that Browder "shall" activate his camera before he confronted Fridoon and continue recording until the contact was concluded. Browder violated that policy.

34. The SDPD recognized that its original body camera policy was deficient. For example, it did not require, or even suggest, that police officers tell the public they were recording the encounter. And it did not impose any requirements on supervisors to train their officers or monitor their use of the cameras. One week after the shooting of Fridoon, the SDPD changed its policy.

35. The new policy is mandated and requires that supervisors monitor officers' use of the body cameras, train the officers to use the cameras, and report violations of the policy. It also requires that officers keep the camera turned on and continue recording throughout the law enforcement contact. And it "strongly encourage[s]" officers "to inform citizens that they are being recorded in an effort to de-escalate potential conflicts."

36. If Browder had followed the old or new policy, the shooting would not have occurred in the manner it did, or likely at all.

37. The KECO Video is direct evidence of Fridoon's shooting. The existence of the KECO Video became known after an employee of KECO saw the video and contacted the media to rebut the SDPD's story. There are two copies of the KECO Video. KECO has one. The SDPD has the other.

38. Plaintiffs requested a copy of the KECO Video from the SDPD but their request was denied. The SDPD told Plaintiffs that they should file a lawsuit if they wanted to see the video.

39. Plaintiffs also asked KECO to turn over its copy of the video. KECO declined, but its attorney said KECO would give Plaintiffs a copy of the video pursuant to a subpoena.

40. Plaintiffs filed this action concurrently with a motion for leave to serve the KECO subpoena and obtain the video (the "KECO Motion"). Defendants agreed that Plaintiffs should receive leave to serve the KECO subpoena and the parties are preparing a joint motion to that effect. Defendants also agreed to provide Plaintiffs with all the videos and documents from the SDPD's investigation of the shooting, pursuant to a protective order, which is being prepared and will be filed soon.

## FIRST CAUSE OF ACTION
**(Deprivation of Civil Rights Under 42 U.S.C. § 1983 (Fourth Amendment))**
**(By the Estate Against Browder)**

41. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

42. This cause of action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

43. Under section 377.20 of the California Code of Civil Procedure, the Estate is Fridoon's successor-in-interest and has standing to assert a claim for Fridoon's pre-death damages.

44. Defendant Browder shot and killed Fridoon. Shooting a weapon is the use of deadly force. Plaintiffs allege that deadly force was not warranted: Fridoon did not have a weapon and was not threatening Browder, or anyone else, with deadly force.

45. In the process, Browder violated Fridoon's right to be free from excessive force as secured by the Fourth and Fourteenth Amendments.

46. Browder acted under color of law and within the course and scope of his employment with the City of San Diego and the SDPD in deploying excessive force against Fridoon.

47. Browder's actions directly and proximately caused injury to Fridoon, as he was mortally wounded and endured pain and suffering in the time before he died.

48. As a result of Browder's actions, the Estate is entitled to damages in an amount to be proven at trial.

49. Browder acted in knowing violation of Fridoon's legal and constitutional rights and without good faith, so punitive damages are warranted.

## SECOND CAUSE OF ACTION

**(Deprivation of Civil Rights Under 42 U.S.C. § 1983 (Fourteenth Amendment))**

**(By the Nehads Against Browder)**

50. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

51. This cause of action is brought pursuant to 42 U.S.C. § 1983 and the

Fourteenth Amendment of the United States Constitution.

52. Defendant Browder shot and killed Fridoon. Shooting a weapon is the use of deadly force. Plaintiffs allege that deadly force was not warranted: Fridoon did not have a weapon and was not threatening Browder, or anyone else, with deadly force.

53. In the process, Browder violated the Nehads' liberty interest in the companionship of their eldest child and only son, a right secured by the Fourteenth Amendment.

54. Browder acted under color of law and within the course and scope of his employment with the City of San Diego and the SDPD in deploying excessive force against Fridoon.

55. Browder's actions directly and proximately caused injury to the Nehads, as the shooting killed Fridoon and deprived the Nehads of the companionship of their eldest child and only son.

56. As a result of Browder's actions, the Nehads are entitled to damages in an amount to be proven at trial.

57. Browder acted in knowing violation of the Nehads' legal and constitutional rights and without good faith, so punitive damages are warranted.

### THIRD CAUSE OF ACTION

**(Deprivation of Civil Rights Under Cal. Civil Code § 52.1)**

**(By Plaintiffs Against Browder and the City)**

58. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

59. The Fourth and Fourteenth Amendments to the U.S. Constitution, and Article I, section 13 of the California Constitution, guarantee (a) an individual's right to be free from excessive force and (b) a parent's right to the companionship of his/her child. By engaging in the acts alleged above, Defendants denied those rights to Plaintiffs, thus giving rise to claims for damages pursuant to California Civil

Code section 52.1.

60. As a direct and proximate result of Defendants' actions, as alleged herein, Plaintiffs were injured as set forth above and are entitled to damages, including compensatory and punitive damages, in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

61. As Fridoon's successor-in-interest, the Estate is entitled to claim Fridoon's pre-death damages. The Nehads have standing to claim damages for Defendants' violations of their Fourteenth Amendment rights.

62. In conducting himself as alleged herein, Browder was acting within the course and scope of his employment with Defendant City of San Diego. Thus, the City is responsible for Browder's actions.

63. In doing the foregoing wrongful acts, Defendants acted in reckless and callous disregard for Plaintiffs' constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious, thus warranting the imposition of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

## FOURTH CAUSE OF ACTION

(Assault and Battery)

(By the Estate Against Browder and the City)

64. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

65. As an actual and proximate result of Browder's wrongful acts, conducted without due care in the execution and enforcement of the law, Fridoon was placed in great fear for his life and physical well-being.

66. As an actual and proximate result of Browder's wrongful acts, Fridoon suffered physical pain and suffering before he died, in an amount that will be proven at trial and in excess of the jurisdictional amount required by this Court. As Fridoon's successor-in-interest, the Estate is entitled to claim those damages.

67. Browder's actions, as alleged above, were intended to cause injury to Fridoon or, in the alternative, were despicable acts carried on with a willful and conscious disregard for the rights and safety of others, and subjected to Fridoon to cruel and unjust hardship in conscious disregard of Fridoon's rights so as to justify an award of exemplary and punitive damages.

68. In conducting himself as alleged herein, Browder was acting within the course and scope of his employment with Defendant City of San Diego. Thus, the City is responsible for Browder's actions.

## FIFTH CAUSE OF ACTION

### (Negligence)

### (By the Estate Against Browder and the City)

69. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

70. At all times mentioned herein, Browder owed Fridoon a duty of care to avoid causing unnecessary physical harm and distress in the execution and enforcement of the law.

71. In conducting himself as alleged herein, Browder breached this duty of care.

72. As an actual and proximate result of Browder's acts, as alleged herein, conducted without due care in the execution and enforcement of the law, Fridoon suffered severe physical injury, extreme emotional and mental distress and other damages in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court. As Fridoon's successor-in-interest, the Estate is entitled to claim those damages.

73. In conducting himself as alleged herein, Browder was acting within the course and scope of his employment with the SDPD. Thus, the City is responsible for Browder's actions.

## SIXTH CAUSE OF ACTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**(Wrongful Death)**

**(By Plaintiffs Against Browder and the City)**

74. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

75. At all times mentioned herein, Browder owed Fridoon – and the Nehads – a duty of care to avoid causing unnecessary physical harm and distress in the execution and enforcement of the law.

76. In conducting himself as alleged herein, Browder breached this duty of care.

77. As an actual and proximate result of Browder's acts, as alleged herein, conducted without due care in the execution and enforcement of the law, Fridoon was killed and the Nehads were deprived of the companionship and support of their son.

78. Under section 377.60 of the California Code of Civil Procedure, as an actual and proximate result of Browder's acts, Plaintiffs suffered damages in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.

79. In conducting himself as alleged herein, Browder was acting within the course and scope of his employment with the SDPD. Thus, the City is responsible for Browder's actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1. For damages in an amount to be proven at trial, including general damages, special damages and punitive damages;

2. For attorneys' fees, costs and interest, as allowed by law; and for such other and further relief as the Court deems just and proper.

DATED: July 23, 2015         MILLER BARONDESS, LLP

                             By: _____
                                 LOUIS R. MILLER
                                 Attorneys for Plaintiffs

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38.1, Plaintiffs hereby demand a trial by jury.

DATED: July 23, 2015

MILLER BARONDESS, LLP

By: _____
LOUIS R. MILLER
Attorneys for Plaintiffs