1   LOUIS R. MILLER (State Bar No. 54141)
    smiller@millerbarondess.com
2   DANIEL S. MILLER (State Bar No. 218214)
    dmiller@millerbarondess.com
3   SCOTT J. STREET (State Bar No. 258962)
    sstreet@millerbarondess.com
4   MILLER BARONDESS, LLP
    1999 Avenue of the Stars, Suite 1000
5   Los Angeles, California 90067
    Telephone:   (310) 552-4400
6   Facsimile:    (310) 552-8400

7   BRIAN E. WATKINS (State Bar No. 190599)
    bwatkins@brianwatkinslaw.com
8   BRIAN E. WATKINS & ASSOCIATES
    925 B Street, Suite 402
9   San Diego, California 92101
    Telephone:  (619) 255-5930
10  Facsimile:  (619) 255-5639

11  Attorneys for Plaintiffs

12              UNITED STATES DISTRICT COURT

13           SOUTHERN DISTRICT OF CALIFORNIA

14

15  S.R. NEHAD, an individual, K.R.          CASE NO.  15-CV-1386-WQHNLS
    NEHAD, an individual, ESTATE OF
16  FRIDOON RAWSHAN NEHAD, an                SECOND AMENDED COMPLAINT
    entity,                                  FOR:
17
                Plaintiffs,                  (1)  DEPRIVATION OF CIVIL
18                                           RIGHTS UNDER 42 U.S.C. § 1983
          v.                                 (FOURTH AMENDMENT);
19
    SHELLEY ZIMMERMAN, in her                (2)  DEPRIVATION OF CIVIL
20  personal and official capacity as Chief  RIGHTS UNDER 42 U.S.C. § 1983
    of Police, NEAL N. BROWDER, an           (FOURTEENTH AMENDMENT);
21  individual, CITY OF SAN DIEGO, a
    municipality, and DOES 1 through 10,     (3) DEPRIVATION OF CIVIL
22  inclusive,                               RIGHTS UNDER 42 U.S.C. § 1983
                                             (*MONELL*);
23              Defendants.
                                             (4)  DEPRIVATION OF CIVIL
24                                           RIGHTS UNDER 42 U.S.C. § 1983
                                             (SUPERVISORY LIABILITY);
25
                                             (5)  DEPRIVATION OF CIVIL
26                                           RIGHTS/BANE ACT (CAL. CIV.
                                             CODE § 52.1);
27
                                             (6)  DEPRIVATION OF CIVIL
28                                           RIGHTS/CUSTOM AND

264982.4

                                             Case No. 15-CV-1386-WQHNLS
                        SECOND AMENDED COMPLAINT

**PRACTICE (CAL. CIV. CODE §52.3);**

**(7) ASSAULT AND BATTERY;**

**(8) NEGLIGENCE; AND**

**(9) WRONGFUL DEATH**

**[DEMAND FOR JURY TRIAL]**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Plaintiffs S.R. Nehad and K.R. Nehad (the "Nehads") and the Estate of Fridoon Rawshan Nehad (the "Estate") (collectively, "Plaintiffs") allege as follows:

## STATEMENT OF THE CASE

**A.** **Use of Deadly Force—The Killing of Fridoon**

1.     The Plaintiffs have finally been able to obtain and review the video of the shooting and killing in this case, as well as the San Diego Police Department's ("SDPD") "investigation" of the shooting.  They reflect highly disturbing and, indeed, shocking violations of law.

2.     The video of the shooting—with defendant SDPD officer Neal Browder the shooter—shows an unprovoked, unnecessary and unwarranted use of deadly force, resulting in the unjustified and illegal killing of an unarmed man—the eldest child and only son of Plaintiffs herein.  The son's name is Fridoon.

3.     Around midnight on April 30, 2015, Fridoon was in downtown San Diego, walking at a leisurely pace, strolling or ambling along.  He was not armed and was not violating the law.

4.     Answering a call about a man with a knife (Fridoon did not have a knife), defendant Browder drove up an alley toward Fridoon.  Browder was more than 100 feet away when he first came upon Fridoon, with his headlights, then his bright lights, on; but with the flashing red lights of his police cruiser off.  From the video, it appears likely that Fridoon did not even know it was a police car approaching.

5.     At about 30 feet, with his brights still shining, Browder got out of his car.  He may or may not have called out to Fridoon—he said he doesn't recall.  With the headlights in his face, Fridoon stopped, whereupon from a distance of approximately 25 feet, Browder drew his weapon and gunned down Fridoon.  This is exactly what the video shows.

6.     When he was approaching Fridoon, Browder had not activated his body video camera, contrary to SDPD policy.  And, of course, when Browder shot and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  killed Fridoon, he did not know that his deed was being captured in horrific detail on

2  the video cameras of an adjacent business. He thought it would be only his "word"

3  about what happened.

4  **B.      The SDPD's "Investigation"**

5        7.      When interviewed by police investigators a few hours after the

6  shooting, Browder admitted Fridoon did not have a weapon, but then refused to talk

7  further and ended the interview. Browder was not tested for drugs or alcohol that

8  night.

9        8.      Five days later, on May 5, 2015, Browder returned to the SDPD to

10  complete the interview. By that time, he had gotten his "story" straight. He told the

11  investigators that Fridoon was coming at him at a fast pace, aggressively, and that he

12  thought Fridoon was going to stab him with a knife.

13        9.      Browder said he didn't have a chance to use other options—he only

14  had time to draw and fire his .45 caliber sidearm—and that the use of a Taser or

15  other less than lethal force, or waiting for back up, never crossed his mind.

16        10.     Browder was not remotely in danger when he killed Fridoon. He made

17  up this story, with the support and encouragement of the SDPD.

18        11.     Browder has been on the police force for over 27 years. He knew the

19  SDPD's culture, its customs and practices. He knew the SDPD would circle the

20  wagons and protect its officers—even where, as here, one had shot and killed an

21  unarmed man.

22        12.     Browder knew that if he toed the party line, and lied about what had

23  occurred, he'd be exonerated and put back on the street. He was right; that's what

24  occurred shortly after the shooting.

25        13.     This custom and practice has been described as the Code of Silence,

26  and it's embedded in the SDPD. When appointed Chief of Police, defendant Shelly

27  Zimmerman announced that she would eradicate the Code of Silence in the SDPD,

28  but she has done just the opposite.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

14. Plaintiffs discovered this practice in their review of the "investigation" file in this case, and they will confirm it in their examination of other SDPD investigations. In this case, Browder knew the SDPD would cover-up, protect and exonerate him, causing him to shoot Fridoon without justification.

15. In the Browder shooting "investigation," the SDPD failed to complete Browder's interview the night of the shooting; failed to test Browder for drugs or alcohol; allowed him to get his "story" straight over the ensuing five days; gave him the video to watch (with his lawyer) before commencing the belated interview; and knowingly accepted and repeated Browder's lies about the distance between him and Fridoon (25 versus 10 to 15 feet) and the further lie that Fridoon was aggressively coming at Browder.

16. With knowledge of these lies, and barely a month after the shooting, the SDPD put Browder back on patrol. Proper supervision, and proper practices within the PD, are the responsibility of the Chief of Police, whose job it is to ensure that internal PD investigations of shootings are not white-washed and that evidence adverse to the officer is not swept under the rug.

17. The Chief of the SDPD, defendant Zimmerman, has not only presided over and supported this unlawful custom and practice—the Code of Silence—she also misled the people of San Diego in saying she would eliminate it. The Code of Silence caused Browder to think he could shoot with impunity.

18. In allowing and supporting this aspect of the Code of Silence, defendant Zimmerman and the PD have sent a message to officers in the street: "You can use deadly force—you can shoot people—knowing that the SDPD will uphold your actions and protect you."

19. Further evidence of the PD's unlawful custom and practice is the dishonest official statement by SDPD Lt. Mike Hastings—made after the SDPD had obtained the shooting video—that a "knife-wielding man [Fridoon] charged at the officer [Browder] prompting him to open fire." This lie is part and parcel of the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  SDPD's Code of Silence—falsely blame the victim and exonerate the officer.

2      20.     Accordingly, Plaintiffs seek recovery of damages plus injunctive relief

3  including a court order that Chief Zimmerman, and the SDPD and City of San

4  Diego, cease and desist from their custom and practice of flawed and faulty

5  investigations of shootings; and instead, be ordered to conduct use of deadly force

6  investigations according to established and accepted practices for police

7  departments throughout the country.

8      21.     Plaintiffs will present evidence of proper investigative practices

9  through expert testimony at trial.

10     22.     Plaintiffs bring this action for violation of their civil rights under 42

11 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States

12 Constitution, as well as applicable state law.[1]

13               **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

14     23.     Pursuant to section 910 of the California Government Code, Plaintiffs

15 filed administrative claims with the City of San Diego ("City").  The claims were

16 denied on July 14, 2015, as the City failed to act on them within the 45-day time

17 period.

18                              **PARTIES**

19     24.     The Estate is Fridoon's probate estate. Under Section 377.20 of the

20 California Code of Civil Procedure, the Estate has standing to bring claims for

21 Fridoon's pre-death pain and suffering, which is also depicted on video.

22     25.     Plaintiff S.R. Nehad is a United States citizen.  She is Fridoon's mother

23 and resides in San Diego, California. Plaintiff K.R. Nehad is a United States citizen.

24 _____

25 [1] This Second Amended Complaint is being filed pursuant to Fed. R. Civ. P.

26 15(a)(1)(B), which allows a party to amend its pleadings once "as a matter of

27 course" within 21 days after service of a responsive pleading (Defendants filed their
Answer to the First Amended Complaint on August 13).

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  He is Fridoon's father and resides in San Diego, California.

2       26.    Defendant Neal N. Browder is a United States citizen.  He resides in

3  Temecula, California.

4       27.    The SDPD is an agency of Defendant City of San Diego, a

5  municipality.  The City is responsible for the actions of the SDPD and its officers.

6       28.    Defendant Shelley Zimmerman is the Chief of the SDPD; she is sued

7  herein in her individual and official capacities.  On information and belief, Chief

8  Zimmerman resides in San Diego County.

9       29.    Plaintiffs are ignorant of the true names and capacities of Defendants

10  sued herein as Does 1 through 10 and therefore sue those unknown Defendants by

11  such fictitious names.  Plaintiffs will amend this Complaint to allege said

12  Defendants' true names and capacities when ascertained.  Plaintiffs are informed

13  and believe that each of the fictitiously named Defendants is responsible in some

14  manner for the occurrences alleged herein, and that Plaintiffs' injuries were

15  proximately caused by the acts and/or omissions of said fictitiously named

16  Defendants.

17  ## JURISDICTION AND VENUE

18       30.    This is a civil suit brought under the Civil Rights Act, 42 U.S.C.

19  § 1983, for violations of Plaintiffs' rights under the United States Constitution.  This

20  Court has subject matter jurisdiction over the parties and this action pursuant to 28

21  U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331.  It has supplemental jurisdiction over the

22  state law claims under 28 U.S.C. § 1367 and principles of pendent jurisdiction.

23       31.    This suit seeks compensatory and punitive damages against all

24  Defendants as permitted by law.  It also seeks injunctive relief against the City and

25  Zimmerman to reform the SDPD's inadequate deadly force investigation

26  procedures.

27       32.    Venue is proper in this Court because the events or omissions that gave

28  rise to the causes of action herein occurred in San Diego, California, within the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   Southern District of California.

2                              **FACTS**

3   **A.    Fridoon and His Family**

4            33.    Fridoon was born in 1973 and grew up in Afghanistan.  He was an

5   intelligent, kind, thoughtful and creative person.  He had a loving and happy

6   childhood.  But it was interrupted by the Russian invasion of Afghanistan and the

7   internal civil war after the Russians left.

8            34.    The civil war pitted the Afghan government against groups called the

9   Mujahideen (some of these groups would later form the Taliban).  Fridoon was

10  drafted into the Afghan army when he was a teenager.  While serving, he was

11  captured by one of the Mujahideen groups.  He spent nearly two months in captivity

12  and was only released after his mother met face-to-face with the kidnappers and

13  pleaded for the release of her son.

14           35.    Fridoon did not talk much about the war.  He likely was tortured.  The

15  Mujahideen had a well-documented practice of torturing prisoners of war.

16           36.    After his release, Fridoon still was in grave danger of persecution by

17  the Mujahideen (which opposed the government).  To save his life, his family got

18  him out of Afghanistan and into refuge in Germany.  He was a teenager at the time.

19           37.    Fridoon spent the next 14 years in Germany, isolated from his family.

20  He saw his parents just a few times.  He did not see his siblings (six sisters) at all.

21           38.    In 1991, the Nehads immigrated to the United States, settling in San

22  Diego. They became American citizens.  Their daughters attended school and have

23  jobs and careers in the U.S. in medicine, law and business.  Fridoon finally joined

24  them in 2003.

25           39.    Fridoon suffered from Post-Traumatic Stress Disorder ("PTSD").  He

26  also was diagnosed with schizophrenia and bipolar disorder.

27           40.    Fridoon battled against his illnesses.  He was intelligent, learning new

28  languages (German and French) and taking classes on computer programming,

1  linguistics and literature.  He became a permanent resident of the United States and

2  obtained a work permit.  He tried to improve his life, but sometimes had manic

3  episodes.  He was arrested and, in 2008, went to jail for burglary.

4     41. Fridoon was loved.  His family spent years and countless hours trying

5  to help him cope with his PTSD and illness.  At times, it was difficult.

6     42. Fridoon was receiving treatment for his PTSD and mental illness.  But

7  he still had manic episodes.  During one episode, he became upset with his mother

8  and sister, who called the police.  The police recommended that the Nehads get a

9  restraining order.

10     43. The police told the Nehads that getting a restraining order would help

11  Fridoon get into a shelter in Oceanside, which he had visited.  The Nehads trusted

12  the police and followed their advice.

13  **B.** **Fridoon's Shooting**

14     44. In the early hours of April 30, 2015, Fridoon was walking in downtown

15  San Diego.

16     45. Officer Browder responded to a 911 call from an adult bookstore

17  employee.  He arrived at the store shortly after midnight, driving his car up the alley

18  between the bookstore and another business ("KECO").

19     46. Fridoon was walking in the alley.  He was at least 100 feet away from

20  the police car when Browder first saw him.  Fridoon was walking at a casual pace.

21  Browder turned his high-beams on, illuminating the entire alley and blinding

22  Fridoon.  He stayed in his car.

23     47. When Fridoon was about 30 feet away, Browder opened the door and

24  got out of the car.  He did not turn his flashing lights on.  He did not use his siren.

25  And his high-beams blinded Fridoon; Fridoon probably did not know he was

26  approaching a police officer.

27     48. Fridoon's pace slowed more.  He was 25 feet away from Browder when

28  he came to a stop.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

7

49.     Fridoon did not make any aggressive movements or threatening gestures.  He was not armed.  He was holding a blue pen in one hand and a box in the other hand.

50.     Without warning, Browder drew his side-arm and fired, hitting Fridoon in the chest.  Shortly thereafter, Fridoon was pronounced dead at UCSD Medical Center.

## C.     The SDPD's Investigation and Cover-Up

51.     Fridoon was not armed, and the SDPD knew it.  Nonetheless, the SDPD tried to "spin" the story against Fridoon, falsely suggesting to his family and the media that he had a knife.

52.     The SDPD also falsely claimed that Fridoon was threatening Browder.  Fridoon was not threatening Browder.  The SDPD knew that because the shooting had been captured on KECO's surveillance camera.

53.     They measured the distance between Browder and Fridoon that morning.  It was 25 feet, yet the SDPD lied and said the distance was 10 to 15 feet and that Fridoon "charged" at Browder.  The police interviewed numerous witnesses; none said Fridoon charged Browder.

54.     The SDPD failed to investigate the shooting properly.  When investigating an officer-involved shooting, a police department should sequester the officer who was involved in the shooting, and the officer should be tested for drugs and alcohol.  The investigators should interview the officer right away and get his story about what happened.  The officer should be interviewed as soon as possible, on the condition that the statement will not be used against him in a criminal proceeding and that staying silent could lead to discipline (the so-called "*Lybarger*" warning).

55.     The SDPD did not do any of those things.  They did not sequester Browder, or make him take a blood test.  They did not give him a *Lybarger* warning.  In fact, a few hours after the shooting, when Browder was speaking with an

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  investigator, a union attorney intervened and stopped the questions. The only

2  question asked was whether Browder had seen any weapons on Fridoon; he said No.

3      56.    The SDPD waited five days to interview Browder. Even then, the

4  interview was a sham. The police gave the video to Browder before the interview.

5  They let Browder and his attorney watch the video for 20 minutes before any

6  questions were asked. Then the investigators asked Browder open-ended, leading

7  questions which were designed to exonerate the officer, not to figure out the truth

8  and take appropriate action.

9      57.    The SDPD's investigation of the shooting was a rubber stamp. That is

10  nothing new: the SDPD has a custom and practice of deficient use of force

11  investigations. It is part of the Code of Silence: police officers cover-up for each

12  other, lie to the public and fail to investigate properly. And the officers know it.

13  They act with impunity because they know they will not be held accountable.

14      58.    Browder was wearing a body camera on April 30. But he did not

15  activate it at the time of the shooting. It should have been: the SDPD's policy

16  required that Browder "shall" activate his camera before he confronted Fridoon and

17  continue recording until the contact was concluded. Browder violated that policy.

18  But the SDPD did not discipline him. It has already put Browder back on the street.

19      59.    This case could have turned out like dozens of other police shootings.

20  But the video shows what really happened. It contradicts the police's (and

21  Browder's) story. That is why the SDPD would not give the video to Fridoon's

22  family. That is why the SDPD wants the video sealed.

23      60.    Browder acted with reckless disregard for Fridoon's life. And he did

24  that because he knew, based on his 27 years' of experience and the SDPD's custom

25  and practice of covering for its officers, that he would get away with it.

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# FIRST CAUSE OF ACTION

## (Deprivation of Civil Rights Under 42 U.S.C. § 1983 (Fourth Amendment))

## (By the Estate Against Browder)

61.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

62.   This cause of action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

63.   Under section 377.20 of the California Code of Civil Procedure, the Estate is Fridoon's successor-in-interest and has standing to assert a claim for Fridoon's pre-death damages.

64.   Defendant Browder shot and killed Fridoon.  Shooting a weapon is the use of deadly force.  Plaintiffs allege that deadly force was not warranted: Fridoon did not have a weapon and was not threatening Browder, or anyone else, with deadly force.

65.   In the process, Browder violated Fridoon's right to be free from excessive force as secured by the Fourth and Fourteenth Amendments.

66.   Browder acted under color of law and within the course and scope of his employment with the City of San Diego and the SDPD in deploying excessive force against Fridoon.

67.   Browder's actions directly and proximately caused injury to Fridoon, as he was mortally wounded and endured pain and suffering in the time before he died.

68.   As a result of Browder's actions, the Estate is entitled to damages in an amount to be proven at trial.

69.   Browder acted in knowing violation of Fridoon's legal and constitutional rights and without good faith, so punitive damages are warranted.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## SECOND CAUSE OF ACTION

### (Deprivation of Civil Rights Under 42 U.S.C. § 1983 (Fourteenth Amendment))

### (By the Nehads Against Browder)

70.     Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

71.     This cause of action is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.

72.     Defendant Browder shot and killed Fridoon.  Shooting a weapon is the use of deadly force.  Plaintiffs allege that deadly force was not warranted: Fridoon did not have a weapon and was not threatening Browder, or anyone else, with deadly force.

73.     In the process, Browder violated the Nehads' liberty interest in the companionship of their eldest child and only son, a right secured by the Fourteenth Amendment.

74.     Browder acted under color of law and within the course and scope of his employment with the City of San Diego and the SDPD in deploying excessive force against Fridoon.

75.     Browder's actions directly and proximately caused injury to the Nehads, as the shooting killed Fridoon and deprived the Nehads of the companionship of their eldest child and only son.

76.     As a result of Browder's actions, the Nehads are entitled to damages in an amount to be proven at trial.

77.     Browder acted in knowing violation of the Nehads' legal and constitutional rights and without good faith, so punitive damages are warranted.

## THIRD CAUSE OF ACTION

### (Deprivation of Civil Rights Under 42 U.S.C. § 1983 (*Monell*))

### (By Plaintiffs Against Zimmerman and the City)

78.     Plaintiffs repeat and re-allege the allegations contained in the preceding

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    paragraphs of this Complaint, as though set forth fully herein.

2         79.    The SDPD's investigation of Fridoon's shooting was grossly

3    inadequate.  But that is nothing new.  The SDPD has a *de facto* policy, custom and

4    practice of not properly investigating its officers' uses of force.  The

5    "investigations" are a rubber stamp.  The process is designed to protect the

6    officers—for example by waiting several days to interview the involved officers and

7    letting them view evidence that could impeach their stories before any questions are

8    asked.

9         80.    This custom, policy and practice of deficient use of force investigations

10   is entrenched in the SDPD.  It is part of the Code of Silence: police officers cover-

11   up for each other, lie to the public and fail to investigate properly.  This de facto

12   policy, custom and practice has created an environment in which police officers can

13   act with impunity and where using excessive force is commonplace and encouraged.

14   Officers know the process is deficient and that they will not be held accountable.

15   The SDPD's deficient investigation procedure is an unconstitutional policy, custom

16   and practice under *Monell v. Department of Social Services of New York*, 436 U.S.

17   658 (1978).

18        81.    The SDPD's deficient investigation procedure was a direct cause of

19   Fridoon's death.  Based on his 27 years' of experience in the SDPD, Browder knew

20   that any use of force investigation would be a whitewash.  No matter how

21   unreasonably he acted, Browder could concoct a story and the investigators would

22   rubber-stamp it.

23        82.    As an actual and proximate result of the SDPD's unconstitutional

24   custom, policy and practice, as alleged herein, Fridoon was killed and the Nehads

25   were deprived of the companionship and support of their son.

26        83.    Therefore, Plaintiffs are entitled to damages in an amount to be proven

27   at trial, as well as injunctive relief and a declaration that the SDPD's use of force

28   investigation procedures are unconstitutional.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**FOURTH CAUSE OF ACTION**

**(Deprivation of Civil Rights Under 42 U.S.C. § 1983 (Supervisory Liability))**

**(By Plaintiffs Against Zimmerman)**

84.     Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

85.     Chief Zimmerman has been responsible for supervising the SDPD's use of force investigations since March 2014, including the investigation of Fridoon's shooting.

86.     Zimmerman knew that the SDPD's force investigation procedure was deficient, a whitewash designed to exonerate the officers. She also knew that it had become so entrenched that it created an environment that actually encourages officers to violate the law. The Department of Justice audited the SDPD. The audit was released in March 2015. It found serious deficiencies in the department's supervision and discipline, including the SDPD's accountability, early intervention, internal investigations and discipline.

87.     Chief Zimmerman promised to clean up the SDPD. She said there would be no more Code of Silence or cover-ups. But nothing has changed, and she knows it. The force investigation process is still a sham, designed to attack the victim, exonerate the officers and cover-up the truth. The officers also know it, so they do not follow the law. That is what happened with Officer Browder, as alleged herein.

88.     Chief Zimmerman acted under color of law in supervising the SDPD's force investigation procedures, including the investigation of Fridoon's shooting.

89.     The acts of Zimmerman's subordinates, who conducted the sham use of force "investigations," deprived Plaintiffs of their constitutional rights, as alleged herein.

90.     Chief Zimmerman knew, or reasonably should have known, that her subordinates were engaging in deficient and unconstitutional "investigations" and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1 that the sham investigations actually encouraged officers to violate the law, leading

2 to unjustified shootings like Fridoon's. She admitted as much after the DOJ

3 released its audit. But Zimmerman did not do anything about it. She did not change

4 the system. She signed off on the "investigations" (including Fridoon's). She

5 condoned, ratified and encouraged her subordinates to continue approving and

6 covering-up potential misconduct, and thus encouraged the rank-and-file to continue

7 violating the law. She showed reckless and callous disregard for the rights of others.

8 As a result, more people have been injured and killed by unlawful police action,

9 including Fridoon.

10      91.     As a result of Zimmerman's actions, as alleged herein, Plaintiffs are

11 entitled to damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Deprivation of Civil Rights Under Cal. Civil Code § 52.1/Bane Act)

### (By Plaintiffs Against Browder and the City)

15      92.     Plaintiffs repeat and re-allege the allegations contained in the preceding

16 paragraphs of this Complaint, as though set forth fully herein.

17      93.     The Fourth and Fourteenth Amendments to the U.S. Constitution, and

18 Article I, section 13 of the California Constitution, guarantee (a) an individual's

19 right to be free from excessive force and (b) a parent's right to the companionship of

20 his/her child. By engaging in the acts alleged above, Defendants denied those rights

21 to Plaintiffs, thus giving rise to claims for damages pursuant to California Civil

22 Code section 52.1

23      94.     As a direct and proximate result of Defendants' actions, as alleged

24 herein, Plaintiffs were injured as set forth above and are entitled to damages,

25 including compensatory and punitive damages, in an amount to be proven at trial

26 and in excess of the jurisdictional amount required by this Court.

27      95.     As Fridoon's successor-in-interest, the Estate is entitled to claim

28 Fridoon's pre-death damages. The Nehads have standing to claim damages for

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

1  Defendants' violations of their Fourteenth Amendment rights.

2      96.    In conducting himself as alleged herein, Browder was acting within the

3  course and scope of his employment with Defendant City of San Diego. Thus, the

4  City is responsible for Browder's actions.

5      97.    In doing the foregoing wrongful acts, Defendants acted in reckless and

6  callous disregard for Plaintiffs' constitutional rights. The wrongful acts, and each of

7  them, were willful, oppressive, fraudulent and malicious, thus warranting the

8  imposition of punitive damages against each individual Defendant in an amount

9  adequate to punish the wrongdoers and deter future misconduct.

10                **SIXTH CAUSE OF ACTION**

11   **(Deprivation of Civil Rights Under Cal. Civ. Code §§ 52.1 and 52.3)**

12                  **(Custom and Practice)**

13       **(By Plaintiffs Against Zimmerman and the City)**

14      98.    Plaintiffs repeat and re-allege the allegations contained in the preceding

15  paragraphs of this Complaint, as though set forth fully herein.

16      99.    California law prohibits a "governmental authority, or person acting on

17  behalf of a governmental authority" from engaging in a "pattern or practice of

18  conduct by law enforcement officers that deprives any person of rights, privilege, or

19  immunities secured or protected by the Constitution or laws of the United States or

20  by the Constitution or laws of California."

21      100.   California law also authorizes an individual whose rights have been

22  violated to obtain equitable and declaratory relief to eliminate an unlawful pattern or

23  practice of conduct.

24      101.   Defendant Zimmerman violated Plaintiffs' rights by supervising a

25  deficient force investigation process, which encouraged officers to violate the law,

26  as alleged herein.

27      102.   The SDPD's deficient force investigation process is an "unlawful

28  pattern or practice of conduct by law enforcement officers," within the meaning of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  California Civil Code § 52.3.

2  103.   Under Civil Code §§ 52.1 and 52.3, Plaintiffs are entitled to a

3  declaration that the SDPD's deficient force investigation procedures are unlawful

4  and unconstitutional, and to injunctive relief ordering Defendant Zimmerman to

5  modify the procedures to comply with the law.

6  **SEVENTH CAUSE OF ACTION**

7  **(Assault and Battery)**

8  **(By the Estate Against Browder and the City)**

9  104.   Plaintiffs repeat and re-allege the allegations contained in the preceding

10  paragraphs of this Complaint, as though set forth fully herein.

11  105.   As an actual and proximate result of Browder's wrongful acts,

12  conducted without due care in the execution and enforcement of the law, Fridoon

13  was placed in great fear for his life and physical well-being.

14  106.   As an actual and proximate result of Browder's wrongful acts, Fridoon

15  suffered physical pain and suffering before he died, in an amount that will be proven

16  at trial and in excess of the jurisdictional amount required by this Court.  As

17  Fridoon's successor-in-interest, the Estate is entitled to claim those damages.

18  107.   Browder's actions, as alleged above, were intended to cause injury to

19  Fridoon or, in the alternative, were despicable acts carried on with a willful and

20  conscious disregard for the rights and safety of others, and subjected to Fridoon to

21  cruel and unjust hardship in conscious disregard of Fridoon's rights so as to justify

22  an award of exemplary and punitive damages.

23  108.   In conducting himself as alleged herein, Browder was acting within the

24  course and scope of his employment with Defendant City of San Diego.  Thus, the

25  City is responsible for Browder's actions.

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# EIGHTH CAUSE OF ACTION

## (Negligence)

### (By the Estate Against Browder and the City)

109.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

110.   At all times mentioned herein, Browder owed Fridoon a duty of care to avoid causing unnecessary physical harm and distress in the execution and enforcement of the law.

111.   In conducting himself as alleged herein, Browder breached this duty of care.

112.   As an actual and proximate result of Browder's acts, as alleged herein, conducted without due care in the execution and enforcement of the law, Fridoon suffered severe physical injury, extreme emotional and mental distress and other damages in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court.  As Fridoon's successor-in-interest, the Estate is entitled to claim those damages.

113.   In conducting himself as alleged herein, Browder was acting within the course and scope of his employment with the SDPD.  Thus, the City is responsible for Browder's actions.

# NINTH CAUSE OF ACTION

## (Wrongful Death)

### (By Plaintiffs Against Browder and the City)

114.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint, as though set forth fully herein.

115.   At all times mentioned herein, Browder owed Fridoon—and the Nehads—a duty of care to avoid causing unnecessary physical harm and distress in the execution and enforcement of the law.

116.   In conducting himself as alleged herein, Browder breached this duty of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  care.

2      117.   As an actual and proximate result of Browder's acts, as alleged herein,

3  conducted without due care in the execution and enforcement of the law, Fridoon

4  was killed and the Nehads were deprived of the companionship and support of their

5  son.

6      118.   Under section 377.60 of the California Code of Civil Procedure, as an

7  actual and proximate result of Browder's acts, Plaintiffs suffered damages in an

8  amount to be proven at trial and in excess of the jurisdictional amount required by

9  this Court.

10      119.   In conducting himself as alleged herein, Browder was acting within the

11  course and scope of his employment with the SDPD. Thus, the City is responsible

12  for Browder's actions.

## **PRAYER FOR RELIEF**

14      WHEREFORE, Plaintiffs pray for judgment as follows:

15      1.   For damages in an amount to be proven at trial, including general

16  damages, special damages and punitive damages;

17      2.   For attorneys' fees, costs and interest, as allowed by law;

18      3.   For injunctive relief regarding the SDPD's use of force investigation

19  process, to wit, that it conform to proper practices as established by the evidence

20  adduced at trial; and

21      4.   For such other and further relief as the Court deems just and proper.

22  DATED: August 27, 2015          MILLER BARONDESS, LLP

25                         By: _____

26                              LOUIS R. MILLER
                               Attorneys for Plaintiffs S.R. NEHAD,
27                              K.R. NEHAD, and ESTATE OF
                               FRIDOON RAWSHAN NEHAD

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38.1, Plaintiffs hereby demand a trial by jury.

DATED:  August 27, 2015                MILLER BARONDESS, LLP


By: _____
        LOUIS R. MILLER
        Attorneys for Plaintiffs S.R. NEHAD,
        K.R. NEHAD, and ESTATE OF
        FRIDOON RAWSHAN NEHAD

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

264982.4

19

Case No. 15-CV-1386-WQHNLS

SECOND AMENDED COMPLAINT