LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
DANIEL S. MILLER (State Bar No. 218214)
dmiller@millerbarondess.com
SCOTT J. STREET (State Bar No. 258962)
sstreet@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 552-4400
Facsimile:   (310) 552-8400

BRIAN E. WATKINS (State Bar No. 190599)
bwatkins@brianwatkinslaw.com
BRIAN E. WATKINS & ASSOCIATES
925 B Street, Suite 402
San Diego, California 92101
Telephone:  (619) 255-5930
Facsimile:  (619) 255-5639

Attorneys for Plaintiffs S.R. NEHAD, K.R. NEHAD, and ESTATE OF FRIDOON RAWSHAN NEHAD

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.R. NEHAD, an individual, K.R. NEHAD, an individual, ESTATE OF FRIDOON RAWSHAN NEHAD, an entity,<br><br>Plaintiffs,<br><br>v.<br><br>SHELLEY ZIMMERMAN, in her personal and official capacity as Chief of Police, NEAL N. BROWDER, an individual, CITY OF SAN DIEGO, a municipality, and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO. 15-cv-1386-WQH-NLS**<br><br>[Assigned to the Honorable William Q. Hayes]<br><br>**SUPPLEMENTAL BRIEF RE PLAINTIFFS' MOTION TO CHANGE VENUE**<br><br>[Filed Concurrently with Notice of Lodgment; Supporting Declarations and exhibits thereto]<br><br>Date:    January 11, 2016<br><br>[HEARING REQUESTED] |

Plaintiffs K.R. Nehad, S.R. Nehad and the Estate of Fridoon Rawshan Nehad (collectively, "Plaintiffs") filed a Motion to Change Venue. (Dkt. 40). The Motion is based on inflammatory pre-trial publicity – specifically, comments by San Diego County District Attorney Bonnie Dumanis about the shooting of Fridoon Nehad by San Diego police officer Neal Browder.

Because of another, second press conference by the DA, Plaintiffs are filing this supplemental brief to advise the Court of DA Dumanis' ongoing campaign to prejudice the jury pool against Plaintiffs; and request that the Court consider this additional, and we think, highly disturbing evidence.

### A. The DA's First Press Conference

Browder shot Fridoon on April 30, 2015. On November 9, 2015, DA Dumanis called a press conference and announced that she would not charge Browder with a crime. She issued a fifteen page "declination" letter, in which she attacked the victim, Fridoon, as a violent criminal. At the same time, the DA praised the shooter, Browder, as a model police officer who did nothing wrong.

DA Dumanis said her office was closing its file on the Nehad shooting. She declined to release the video of the shooting, citing the Protective Order in this case. DA Dumanis said that she would not release the shooting video because of her duty to avoid "pre-trial publicity." According to the DA: "We don't try our cases in the media . . . ." (Dkt. 41, Exh. KK.)

### B. The DA's Second Press Conference

On December 16, 2015, this Court vacated the Protective Order. (Dkt. 51) The Court stayed the Order for seven days to give the City and Browder time to appeal, until December 23, 2015.

On December 22 – one day before the stay expired – DA Dumanis called another press conference and released the video and other evidence subject to the Protective Order. (Supplemental Declaration of Scott J. Street, dated Dec. 28, 2015 ("Suppl. Street Decl."), ¶ 2, Exh. A ["DA Video"].)

1   In releasing this evidence, the DA violated the Protective Order. That Order
2   applied to the parties "and anyone acting in concert with them or participating with
3   them . . . ." (Dkt. 13, ¶¶ 3, 4.) Earlier this year, in a face-to-face meeting, the DA's
4   office point blank told us that they were working hand-in-glove and in close
5   coordination with the City and the SDPD. (Declaration of Louis R. Miller, dated
6   Dec. 28, 2015 ("Miller Decl."), ¶¶ 2-3.) That is how the DA got the video and
7   virtually all the evidence in the case. (*Id.*)

    It's obvious what's going on here: The DA did not want the video to get out without her "spin." So the DA jumped the gun – the Order did not expire until the next day – and released the video early. That is a clear-cut violation of a federal Court order.

    In her second press conference, DA Dumanis in effect gave an "opening statement" on behalf of the City and Officer Browder. The press conference lasted over an hour. The DA released evidence that she thought was favorable to Browder. She walked reporters through the evidence, like she was defending Browder at trial.

    The DA made argumentative and inaccurate statements. For example, DA Dumanis said that:

    - Fridoon was 17 feet away from Browder when the shooting occurred. (DA Video [Disc 2], at 10:00.)
    - Fridoon "actually crossed over, from one side of the alley to the other side of the alley, to head directly toward Officer Browder." (*Id.* [Disc 1] at 18:25.)
    - Browder "didn't have time to pull out a stun gun or look for a stun gun or to have any other weapon available." (*Id.* [Disc 2] at 9:50.)
    - Browder "didn't have time to assess whether [the object Fridoon was holding] was a pen or a knife." (*Id.* [Disc 2] at 10:20.)

    According to the evidence in the SDPD's investigation file – which the DA had in its possession in its entirety – but suppressed: (1) Fridoon was 25 feet away

from Browder when the shooting happened. (2) He was walking slowly through the alley and came to a stop before Browder shot him. (3) The shooting occurred about 30 seconds after Browder arrived at the scene, providing ample time for Browder to assess the situation. (Suppl. Street Decl., Exhs. L, N, O.)

DA Dumanis also compared Fridoon's pen to a butterfly knife. In a bizarre scene, she showed a YouTube video of an individual (not Fridoon) manipulating a butterfly knife in a threatening manner and she suggested *that* was what Browder saw Fridoon doing. (DA Video [Disc 1] at 19:40.)

Per the SDPD's own investigation file – which the DA had and relied on – Browder never mentioned a butterfly knife. He never said Fridoon was manipulating the pen like a butterfly knife. In fact, immediately after the shooting, Browder told investigators that Fridoon was unarmed. (Suppl. Street Decl., Exh. M.)

The DA also released an edited version of the shooting video, with the audio from police radio calls overlaid and added as subtitles, plus other videos from the night of the shooting. She released witness statements and reports, but only those that were favorable to Browder. She re-circulated copies of her declination letter, containing the prejudicial statements about Fridoon previously addressed in our Motion.

Dumanis did not release any evidence favorable to Plaintiffs. For example, she did not release Browder's statement about the shooting, in which he first said that Fridoon did not have a weapon but then five days later, after talking to his lawyer and watching the video, changed his story and said that he thought Fridoon had a knife and was going to stab him. (*Id.*) The DA also did not release the SDPD investigation report, which shows that Browder and Fridoon were 25 feet apart when the shooting occurred, not 17 feet. (*Id.*, Exh. L.)

The DA's press conference was the lead story on television and radio stations throughout San Diego. The DA's edited version of the shooting video was posted

on YouTube and has been viewed over 45,000 times already. (Suppl. Street Decl., ¶ 4.)

### C. The Court Should Consider this Additional Evidence

This media campaign by DA Dumanis is unprecedented. The DA previously announced that criminal charges would not be filed against Browder. That ended her involvement. There was no reason for her to hold *another* press conference, much less put on a presentation defending the officer's actions.

We are lodging a video of DA Dumanis' press conference with the Court, along with some of the news coverage of the DA's second media attack. It shows how an important, high-level public prosecutor is rallying around Browder and trying to prejudice the jury pool.

Last, this supplemental filing could not have been submitted earlier because the DA did not hold her press conference until December 22, almost a month after Plaintiffs filed the Motion. *See Hamerlinck v. Robert Mondavi Winery*, No. C 00-3510 MMC, 2002 WL 598436, at *1 (N.D. Cal. Apr. 12, 2002) (considering supplemental evidence under "good cause" standard of Rule 6(b)); *see also Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. 2:10-CV-861 RSM, 2014 WL 4925487, at *2 (W.D. Wash. Sept. 30, 2014) (citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir.2006) (en banc) and granting request to consider supplemental evidence).

DATED: December 28, 2015

Respectfully submitted,

MILLER BARONDESS, LLP

By: _____
LOUIS R. MILLER
Attorneys for Plaintiffs S.R. NEHAD,
K.R. NEHAD, and ESTATE OF
FRIDOON RAWSHAN NEHAD