UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.R. NEHAD, an individual, K.R. NEHAD, an individual, ESTATE OF FRIDOON RAWSHAN NEHAD, an entity,<br><br>                                   Plaintiffs,<br>v.<br>NEAL N. BROWDER, an individual, and DOES 1 through 10, inclusive,<br>                                   Defendants. | Case No.:  15-CV-1386 WQH NLS<br><br>**ORDER:**<br>   **(1) DETERMINING DISCOVERY DISPUTE NO. 1; AND**<br>   **(2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**<br><br>(Dkt. Nos. 61 and 62) |

Before the Court are the parties' Joint Motion for Determination of Discovery Dispute No. 1 and Plaintiffs' Motion for Protective Order under Rule 26(c).  For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to compel further responses to their discovery requests, and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for protective order.

   **I.   Background**

On April 30, 2015, San Diego Police Officer Neal Browder fatally shot Fridoon Nehad ("Decedent").  (Dkt. No. 61 at 3; Dkt. No. 62-1 at 1.)  The parents of Decedent and Decedent's Estate ("Plaintiffs") filed this civil rights action under 42 U.S.C. section

1983. They allege in their operative Second Amended Complaint constitutional claims of excessive force, violation of the Nehads' liberty interest in the companionship of their son, a *Monell* claim challenging the San Diego Police Department's ("SDPD") investigation procedures, a supervisory liability claim against Police Chief Shelley Zimmerman, state law civil rights claims, and claims for assault and battery, negligence, and wrongful death. (Dkt. No. 20.)

The parties are in the discovery phase. They exchanged discovery requests and objections and responses, as well as issued subpoenas on third parties. They met and conferred and were unable to resolve a number of discovery issues. The parties dispute whether Plaintiffs must provide further responses to Defendants' requests for Decedent's medical records and psychiatric history. Plaintiffs seek a protective order prohibiting or limiting the disclosure of Decedent's medical and mental health records. Plaintiffs also move for a protective order to prohibit or limit the requests for the Nehads' phone records, text messages and emails. (Dkt. No. 62 at 2; Dkt. No. 62-1 at 9.) Defendants oppose Plaintiffs' motion for a protective order.

The parties also dispute whether Plaintiffs must produce information regarding civil, criminal or administrative proceedings involving Decedent. (Dkt. No. 61 at 7.) Defendants also seek information about the medical costs allegedly incurred as a result of the incident. (Id. at 8.) They also disagree about various other discovery issues, which were not briefed in the memorandum but were included in their joint statement. (Dkt. No. 61-1 at 19-25.) They timely brought these disputes before the Court. (Dkt. No. 57.)

## II. Discussion

Unless otherwise limited by court order, the scope of discovery is as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

15-CV-1386 WQH NLS

discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  Once the party seeking discovery establishes that the request meets this relevancy requirement, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) (*citing DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D.Cal.2002) and *Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir.1975)).  For good cause, a court may "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense…." Fed. R. Civ. P. 26(c)(1).

With these principles in mind, the Court turns to the substance of the parties' dispute.  The Court focuses on those arguments and objections that merit discussion.  To the extent the Court does not specifically address other objections, the Court finds those objections to be boilerplate or otherwise lack merit and thus they are overruled.

### a. Decedent's Medical Records (Request Nos. 1 and 2) and Mental Health Records (Request Nos. 3 and 4)

Defendants argue they are entitled to Decedent's psychiatric and medical history based on two primary arguments.  First, Defendants argue that because Plaintiffs bring claims for wrongful death, the documents are relevant to proof of non-economic damages. (Dkt. No. 61 at 4, *citing Aguilar v. Cnty of Fresno*, 2009 WL 3617984, *5 (E.D. Cal. Dec. 8, 2009.)  Because claims for wrongful death seek monetary value for the loss of, *inter alia*, love and companionship, information about Decedent's psychiatric and medical records are relevant to the extent his schizophrenia, bi-polar disorder and PTSD affected his relationship with his parents.  (Id. at 5.)  Second, they argue the information may be relevant to corroborate Officer Browder's version of events because Decedent's pre-shooting conduct is disputed.  Defendants contend Decedent's mental state was impaired and he thus acted irrationally and lacked proper judgment.  (Id.)

Plaintiffs respond that Decedent's psychiatric and medical history records are not relevant and are privileged. They argue they do not seek damages for Decedent's emotional distress; rather, their wrongful death claims are based on the loss of companionship and emotional harm the parents suffered, but Defendants do not seek the parents' records. (Dkt. No. 61 at 8.) Second, Plaintiffs argue that Decedent's mental state before the shooting is irrelevant because Officer Browder did not know anything about the Decedent at the time of the incident, and so it sheds no light on whether Officer Browder acted reasonably at that time. (Id.) Third, they argue the mental health records are protected by the psychotherapist privilege.

Having reviewed and considered the parties' arguments, the Court finds Plaintiff's psychiatric and medical history records are relevant to Plaintiffs' wrongful death claims. Decedent's psychiatric conditions may have impacted his relationships with his parents, which in turn would inform the extent to which Plaintiffs incurred a loss of companionship and society. *Aguilar* is instructive in this regard because evidence of Decedent's psychiatric history could shed light on its impact on the familial relationship with his parents. *See Aguilar,* 2009 WL 3617984, *5-7. Moreover, contrary to Plaintiffs' contention, the fact that the defendant in *Aguilar* sought the plaintiff's records and not the decedent's records is immaterial because the inquiry here focuses on the nature of the Nedads' and Decedent's relationship. Accordingly, the Court deems Decedent's medical and mental health records relevant.

### i. Whether the Mental Health Records Are Protected by the Psychotherapist Privilege (Request Nos. 3 and 4)

Because the documents sought are relevant to assess damages for Plaintiffs' wrongful death claims, they must be produced unless they are privileged. Plaintiffs contend Decedent's mental health records are protected by the psychotherapist privilege. (Dkt. No. 62-1 at 1.) Plaintiffs argue that although courts apply different approaches to determine if the privilege is waived, "they agree that a party does not waive the psychotherapist privilege by filing a lawsuit unless that party seeks damages for

emotional distress." (Dkt. No. 62-1 at 7.) Plaintiffs assert they do not seek damages for emotional distress and do not assert an independent tort claim for emotional distress, and thus did not waive the privilege. They also aver they do not plan to use Decedent's mental health to prove their damages or to call his psychotherapist as a witness or put those communications in issue. (Id. at 8.)

Defendants respond that Plaintiffs put their relationship between them and their son at issue, and thus waived the privilege, when they alleged a cause of action for wrongful death. They contend that evidence of Decedent's psychiatric history bears on the relationship Decedent had with his family and in measuring the loss of companionship and society Plaintiffs allege they incurred. (Dkt. No. 61 at 4-5; Dkt. No. 72 at 3).

The Supreme Court held a psychotherapist privilege exists under federal common law in *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure …." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The psychotherapist privilege "covers confidential communications made to licensed psychiatrists and psychologists" and to "licensed social workers in the course of psychotherapy." *Id.* at 15. The Supreme Court further noted that "[l]ike other testimonial privileges, the patient may of course waive the protection," but the Court did not provide specific guidance as to when the privilege is deemed waived. *Id.* at fn. 14.

After *Jaffee*, district courts have adopted different approaches to determine whether the patient waived his or her psychotherapist-patient privilege. Under the "broad approach," courts have found that alleging emotional distress in a complaint constitutes waiver. *Engert v. Stanislaus County*, 2014 U.S. Dist. LEXIS 146418, *6 (E.D. Cal. Oct. 14, 2014) (discussing different approaches to determining waiver and citing cases). Under the "narrow approach," a party must affirmatively rely on the psychotherapist-patient communications before the privilege is deemed waived. *Id.* Under the "middle

1  ground approach," courts have generally found a waiver when the plaintiff has done more
2  than allege "garden-variety" emotional distress.  *Id.*

3  Plaintiffs contend this Court should adopt the narrow approach and conclude the
4  privilege is not waived because Plaintiffs do not intend to rely on Decedent's
5  psychotherapist communications to support their claims.  (Dkt. No. 61 at 13; Dkt. No. 74
6  at 4-7 (*citing Awalt v. Marketti,* 287 F.R.D. 409, 419 (N.D. Ill. 2012), *Campbell v. Logue,*
7  2012 WL 1666762 at *2-4 (S.D. Cal. May 11, 2012), *Fritsch v. City of Chula Vista,* 187
8  F.R.D. 614, 621 (S.D. Cal. 1999)).  They urge this Court to follow *Fritsch*, where the
9  magistrate judge adopted the narrow approach and issued a protective order prohibiting
10 disclosure of mental health records.  (Dkt. No. 74 at 4-5.)  Alternatively, Plaintiffs argue
11 that even if this Court adopts the broad approach, the privilege has not been waived
12 because they do not assert claims for emotional distress or seek emotional distress
13 damages.  (Id. at 5.)

14 Defendants argue that the privilege has been waived because Plaintiffs put
15 Decedent's mental health records in issue by asserting their wrongful death claims.  In
16 support, they rely on *Aguilar*, where the court determined the plaintiff's records should
17 be produced as her drug use may have impacted her relationship with the decedent and
18 thus would go toward assessing her loss of consortium claim, as well as her claims for
19 lost wages and medical expenses.  (Dkt. No. 61 at 4 (*citing Aguilar,* 2009 WL 3617984,
20 *5-7)).

21 The Court reviewed the authorities cited by the parties, as well as additional
22 authorities uncovered through its own research.  After careful consideration, this Court
23 adopts the broad approach and concludes Plaintiffs waived the psychotherapist privilege.

24 Plaintiffs' reliance on *Fritsch* is unpersuasive.  Plaintiffs overlook that after the
25 magistrate judge in *Fritsch* adopted the narrow approach and issued the order prohibiting
26 disclosure of mental health records, the district judge subsequently modified the
27 magistrate judge's order.  The district judge instead adopted the broad view and found the
28 mental health records were discoverable and privilege was deemed waived.  *Doe v. City*

*of Chula Vista,* 196 F.R.D. 562 (S.D. Cal. 1999).  The district judge reasoned that "[t]he court's decision is based primarily on its concern that the discovery process be fair to both parties, so that each side is able to present an effective and complete case to the jury."  *Id.* at 569.  Plaintiffs' reliance on *Awalt* and *Campbell* is likewise unpersuasive.  *Awalt* is an out-of-circuit authority that considered the nature of Illinois's psychotherapist-patient privilege in the context of analyzing whether the privilege was waived, and thus is inapposite to the analysis here.  *Awalt,* 287 F.R.D. at 416.  *Campbell* did not consider or evaluate that the value of the relationship and the emotional contributions between each participant in the relationship is in issue when it analyzed privilege.  *See Campbell,* 2012 WL 1666762, *passim*.

      The Court finds *Aguilar* persuasive to the extent that, like here, Plaintiffs' claim for wrongful death put their relationship with the Decedent at issue.  Information about Decedent's psychiatric history may well provide insight into the familial relationship and the damages to which Plaintiffs claim they are entitled.  The Court also finds instructive two similar cases from courts in this Circuit, *Engert v. Stanislaus County*, 2014 U.S. Dist. LEXIS 146418 (E.D. Cal. Oct. 14, 2014) and *I.R. v. City of Fresno*, 2014 U.S. Dist. LEXIS 52094 (E.D. Cal. Apr. 11, 2014).

      In both *Engert* and *I.R.,* the plaintiffs brought suits under 42 U.S.C. section 1983 that also included state law claims for wrongful death.  The defendants in those cases sought the mental health records of the decedents.  The *Engert* court held that the mental health records of both the decedent and the decedent's spouse were discoverable and the privilege had been waived.  *Engert,* 2014 U.S. Dist. LEXIS 146418 at *9-15.  The *Engert* court reasoned: "The damages in this case arise from the value of the marital relationship, how each person in the relationship perceived that relationship, and each person's contribution to the relationship…. [T]he underlying emotional component of the relationship is directly at issue in this case. While [the plaintiff] is not seeking what is traditionally termed as 'emotional distress' damages, there is no doubt the emotional value of the relationship and the emotional value of the contribution/no contribution to

the relationship is the fundamental component of the damages sought in this case." *Id.* at *9. The *Engert* court concluded that "this valuation is not a one-way street. Defendants are entitled to test the validity of the value of that marriage, and here, the requested records are relevant and probative of that inquiry." *Id.* at *12.

The *I.R. v. City of Fresno* court likewise held the privilege had been waived. *Id.* at *9. The court noted that no specific cause of action for intentional infliction of emotional distress was made but that nonetheless decedent's emotional distress "and the Plaintiffs' loss of familial relationship are central to the claims alleged in both complaints. The extent to which decedent was suffering from mental illness, or whether he had a significant drug problem at the time of the incident, may have affected his ability to participate in familial relationships and/or to provide financial support to his family. It may also have affected the altercation he had with police. Given the broad definition of discovery under Fed. R. Civ. P. 26(b), Defendants should be able to investigate these areas at this phase of the litigation…. Additionally, the decedent's privacy can be protected though a protective order." *Id.* at *11-13.

This Court agrees with the reasoning in *Engert* and *I.R v. City of Fresno*. Here, as in those cases, Plaintiffs filed this civil rights suit and also allege claims for wrongful death. Although they assert do not expressly seek emotional distress damages such that the Decedent's emotional health is at issue for those damages, they do seek damages for the loss from the value of their familial relationship.[1] As demonstrated by the allegations in their complaint, Plaintiffs put Decedent's mental illnesses at issue, alleging that "Fridoon suffered from Post-Traumatic Stress Disorder ("PTSD"). He also was

---

[1] The Court also notes although Plaintiffs state they do not seek damages for Decedent's emotional distress (Dkt. No. 62-1 at 7), they nonetheless allege under their negligence claim that "Fridoon suffered … extreme emotional and mental distress and other damages in an amount to be proven at trial and in excess of the jurisdictional amount required by this Court. As Fridoon's successor-in-interest, the Estate is entitled to claim those damages." Second Amend. Compl. ("SAC") ¶ 112.

diagnosed with schizophrenia and bipolar disorder." SAC ¶ 39.  "Fridoon battled against his illnesses…. He tried to improve his life, but sometimes had manic episodes." Id. ¶ 40. "Fridoon was loved. His family spent years and countless hours trying to help him cope with his PTSD and illness. At times, it was difficult." Id. ¶ 41. "Fridoon was receiving treatment for his PTSD and mental illness. But he still had manic episodes. During one episode, he became upset with his mother and sister, who called the police.  The police recommended that the Nehads get a restraining order."  Id. ¶ 42.

In sum, the extent to which Decedent suffered from mental illness or had substance abuse issues may have affected Decedent and his family's relationships.  The valuation of their relationship is not a "one-way street." *Engert v. Stanislaus County*, 2014 U.S. Dist. LEXIS 146418 at *12.  Because Plaintiffs put their familial relationship with Decedent at issue, Defendants are entitled to have the discovery process be fair to both parties so that each can present an effective and complete case to the jury.  *Doe v. City of Chula Vista,* 196 F.R.D. at 569.  Accordingly, the privilege is deemed waived and the mental health records must be produced.

For the above reasons, the Court **GRANTS** Defendants' motion to compel further responses to Request Numbers 1, 2, 3, and 4, subject to a protective order to protect Decedent's privacy.

### b. Civil, Criminal or Administrative Proceedings  (Request Nos. 5, 6, 7, 8)

Defendants' request numbers 5, 6, 7 and 8 seek documents pertaining to any criminal, civil or administrative proceedings involving Decedent. (Dkt. No. 61-1 at 11-14.) Plaintiffs objected on grounds they are overbroad.  (Id.)  In the memorandum of points and authorities, however, Defendants clarify that they seek documents pertaining to proceedings between Decedent and his family, as opposed to documents pertaining to any proceedings involving Decedent.  They contend this information is relevant to measure the relationship between Decedent and his family for purposes of evaluating Plaintiffs' non-pecuniary damages.  (Dkt. No. 61 at 6-7.)  Defendants do not make any

showing that documents pertaining to proceedings involving Decedent and anyone other than his family have any relevance.

Plaintiffs respond that they have agreed to search for and produce any responsive documents in their possession, custody or control regarding Decedent's "prior encounters with law enforcement and legal proceedings between Fridoon and his family" to the extent Defendants do not already have them. (Dkt. No. 61 at 15.)

The Court agrees with Defendants that the information sought may bear on Plaintiffs' non-pecuniary damages for the wrongful death claim. Given that Defendants have narrowed their requests to documents pertaining to civil, criminal and administrative proceedings between Decedent and his family, and given that Plaintiffs do not oppose producing such documents to the extent they are in their possession, custody or control, the Court **GRANTS** Defendants' request to compel further responses to these categories to the extent they seek documents pertaining to civil, criminal or administrative proceedings only between Decedent and his family.

### c. Information Regarding Claimed Medical Costs (Request Nos. 9, 10, 11)

Defendants seek a more concrete response from Plaintiffs regarding the medical costs they claim resulted from this incident. They seek information about any medical costs that were covered by health insurance, information about the costs Plaintiffs claim were incurred when Decedent was treated at the University of California, San Diego ("UCSD") Medical Center to assess special damages, and any other "out of pocket" costs related to the medical expenses. (Dkt. No. 61 at 8; Dkt. No. 61-1 at 15-18.)

Plaintiffs respond they asked UCSD to produce all medical records and bills related to this incident but they have not yet received those documents. (Dkt. No. 61 a 16.) They also state they will agree to produce any related documents and information they receive from UCSD for charges incurred as a result of the incident. (Dkt. No. 61-1 at 16-19.) Plaintiffs also agreed to produce documents regarding remaining out-of-pocket

expenses they claim for funeral and burial expenses. (Dkt. No. 61-1 at 19.) They contend the health insurance request is overbroad and seeks irrelevant information. (Id.)

Information about any medical expenses Plaintiffs potentially incurred when Decedent was treated at UCSD Medical Center are relevant to assessing special damages in this case. (Second. Amend. Compl. (Dkt. No. 20 at 20) (seeking special damages).) Plaintiffs do not dispute this and have agreed to produce responsive information if they receive it. The Court agrees with Plaintiffs that the request for any and all documents relating to health insurance (Request No. 9) is overbroad as phrased. (Dkt. No. 61-1 at 15.) Request Number 9 must be narrowed to seek only health insurance documents that covered medical expenses incurred as a result of Decedent's treatment.

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion to compel further responses to these requests. Plaintiffs must supplement their responses once they obtain information from UCSD Medical Center regarding any medical expenses incurred for treatment to Decedent as a result of this incident. Alternatively, if Plaintiffs learn no such expenses were incurred or they do not receive the information they requested from USCD Medical Center, they must likewise supplement their responses to reflect this. To the extent Plaintiffs determine health insurance was used in connection with the charges incurred for Decedent's treatment, such information must also be provided.

### d. Interrogatories Regarding SDPD's Use of Force Policy and Investigation Process (Request Nos. 12, 13, 14)

Defendants seek further responses regarding Plaintiffs' contentions that SDPD's use of force policy violates the Constitution, and whether Plaintiffs contend another police agency has a better deadly force investigation process and if so, which agency. (Dkt. No. 61-1 at 19-22.) Plaintiffs object and argue the motion is premature until Defendants produce documents regarding their investigation of Decedent's shooting, information about other investigations, and information about their policies and procedures for investigations. (Id.)

1    Contention interrogatories regarding allegations in Plaintiffs' complaint are
2    properly propounded under Federal Rule of Civil Procedure 33(a)(2).  Plaintiffs are not
3    entitled to withhold information until they obtain to their own satisfaction all discovery to
4    which they believe they are entitled.  *See Henry v. Rizzolo*, 2010 U.S. Dist. LEXIS
5    95402, *18 (D. Nev. Aug. 24, 2010) ("requiring a party to respond to contention
6    interrogatories earlier in discovery is consistent with Fed. R. Civ. P. 11 which requires
7    that plaintiffs have some factual basis for the allegations in their complaint.")  They must
8    provide their responses now based on the information they presently have available.  To
9    the extent Plaintiffs later learn of additional responsive information, they may supplement
10   their responses with such information.  Fed. R. Civ. P. 26(e)(1).  Accordingly, the Court
11   **GRANTS** Defendants' motion to compel further responses to these requests.

### e.  Punitive Damages (Request No. 15)

13   Defendants seek documents supporting Plaintiffs' claim for punitive damages.
14   (Dkt. No. 61-1 at 22-23.)  Plaintiffs object on the ground that this request is premature,
15   and that any documents supporting their punitive damages claim will come from
16   Defendants because punitive damages are awarded where the "defendant's conduct was
17   driven by evil motive or intent, or when it involved a reckless or callous indifference to
18   the constitutional rights of others."  (Dkt. No. 61-1 at 23 (*citing Morgan v. Woessner*, 997
19   F.2d 1244, 1255 (9th Cir. 1993).  Plaintiffs also state, however, that if they discover
20   documents supporting their punitive damages claim, then they will produce them.
21   The information sought is relevant, and Plaintiffs do not contend otherwise.
22   Plaintiffs' argument that the information sought will emanate from Defendants, however,
23   amounts to an unsupported objection and non-responsive answer.  If Plaintiffs do not
24   have any responsive documents in their possession, custody or control, then they must so
25   state.  And if they later discover responsive documents they may supplement their
26   response to reflect this.    Fed. R. Civ. P. 26(e)(1).  Accordingly, the Court **GRANTS**
27   Defendants' request to compel further responses to this request.

### f.  Interrogatory Regarding Whether Decedent Threatened Anyone

**Within Five Hours Before The Shooting (Request No. 16)**

Defendants seek a further response to their interrogatory about whether Plaintiffs contend Decedent threatened anyone within five hours before the shooting. (Dkt. No. 61-1 at 23.) They contend this information is relevant to their position that Officer Browder's actions were reasonable under the circumstances. (Id.) Plaintiffs respond that the information is irrelevant to this excessive force case. (Id. at 24.)

The Court agrees with Plaintiffs that Defendants have not demonstrated the relevance of this discovery to the claims or defenses in this case. Defendants do not adequately explain why discovering whether Plaintiffs contend Decedent threatened others with a knife before the shooting would add anything to the inquiry of whether *Officer Browder believed* Decedent was armed with a knife. Accordingly, the Court **DENIES** Defendants' request to compel a further response to this request.

### g. Plaintiffs' Motion for Protective Order

Plaintiffs move for a protective order regarding the Decedent's medical and mental health records, as well as the Nehads' phone records. (Dkt. No. 62.) Plaintiffs note that not only did Defendants serve discovery requests regarding these categories of documents, but they also served subpoenas to a number of health care providers and communication providers seeking this information. They ask the Court to grant their motion for a protective order to prohibit this discovery or at a minimum, to order Defendants to revise their requests and subpoenas by limiting them in time and subject matter, and to order that any documents produced be designated as confidential. (Dkt. No. 62-1 at 2.) Defendants oppose and assert the records sought are relevant and necessary to assess Plaintiffs' damages. (Dkt. No. 72.) The Court addresses the categories of documents below.

### i. Medical and Mental Health Records

Plaintiffs do not specify in their motion for protective order which discovery request numbers are exactly at issue. Instead, Plaintiffs attached all the discovery requests, responses, and subpoenas that were served, and only cite to two requests

pertaining to medical or psychiatric records as examples.  (Dkt. No. 62-2 (Street Decl.), Exhs. A-S; Dkt. No. 74 at 6.)  Defendants likewise do not specify which requests or responses are specifically at issue.  (Dkt. No. 72, *passim*.)  The Court thus provides its discussion based on the presumption that the requests at issue are the ones specified in the joint motion for determination of discovery dispute pertaining to medical and mental health records (i.e., Request Numbers 1-4), and the subpoenas to third parties for medical and mental health records (Street Decl., Exhs. T, U, V, W, X).[2]

The parties largely reassert the same arguments regarding Decedent's medical and mental health records that were asserted in their joint motion for determination of discovery dispute.  (Dkt. No. 62-1 at 5-9; Dkt. No. 72 at 3-5; Dkt. No. 74 at 2-6.)  For the same reasons as stated in section II.a above, the Court finds the requested records are relevant and that the psychotherapist privilege has been waived because Plaintiffs put the records in issue by asserting claims for wrongful death.

Plaintiffs' objection based on grounds that the discovery requests and subpoenas are overbroad as to time has merit.  *See e.g., Price v. Cunningham*, 2012 WL 5386574 at *2 (E.D. Cal. Nov. 1, 2012) (where subpoena for medical records contained no restriction as to time or subject matter, the court limited the production of medical records to the relevant time period and medical complaints at issue).  Here, Defendants' subpoenas to the medical providers for Decedent's medical records contain no restrictions at all as to time.  (Street Decl., Exhs. T, U, V, W, X).  Given that Plaintiffs allege Decedent did not

---

[2] To the extent any other discovery requests regarding medical or psychiatric records are at issue that Plaintiffs did not specifically identify, the parties should use the ruling in this order as a guide to determine whether documents responsive to those requests should be produced.  It is the parties' responsibility to specifically identify the disputes for which they seek judicial intervention, and not for the Court to sift through and guess at which of the nearly three-hundred pages of exhibits containing the discovery requests and responses are at issue.  The Court will not permit the parties to brief a further joint motion for determination of discovery dispute on any other requests regarding medical or mental records that were not already specifically identified, as the time to do so has already expired.

1 rejoin his family in the United States until 2003, the Court finds that information about
2 Decedent's mental health only from 2003 through the present are relevant.  Accordingly,
3 the subpoenas must be narrowed in time from 2003 to the present.

Additionally, due to the private and sensitive nature of the records sought, the Court finds good cause to require that Decedent's mental and medical records be produced subject to a protective order that provides protections for Decedent's privacy. The parties will be directed to meet and confer and submit a proposed protective order governing the handling and use of confidential information that will produced. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for a protective order.  The responsive documents shall be produced subject to a protective order, and only from 2003 to the present.

### ii.  Cell Phone Records

Plaintiffs also seek a protective order to quash or modify the subpoenas seeking Decedent's cell phone records and the Nehads' cell phone records.  (Dkt. No. 62-1 at 9; Street Decl., Exhs. Y-AA.)  The subpoenas are apparently directed to Decedent's and the Nehad's cell phone provider, Sprint Spectrum L.P. ("Sprint").  They seek documents pertaining to, *inter alia*, call logs, text messages, voicemails, and emails.  The subpoenas contain no date restrictions.  (*See* id.)  Plaintiffs aver these records are irrelevant because they have nothing to do with Plaintiffs' damages or Officer Browder's actions.  (Dkt. No. 62-1 at 9, *citing Ademiluyi v. Phillips*, 2014 WL 7012493 at *2-4 (D. Nev. Dec. 12, 2014) and *Andrades v. Holder*, 286 F.R.D. 64, 66 (D.D.C. 2012).)  They also contend the requests are overbroad as to scope and time.  (Dkt. No. 74 at 6-7.)

Defendants respond that the records sought are relevant to the Nehads' damages. Like Decedent's psychiatric and medical records, Defendants argue the cell phone records may also shed light on the relationship that existed between Decedent and his family to evaluate Plaintiffs' claims to compensation for loss of society, comfort and protection. (Dkt. No. 72 at 5-6.)

The court must quash or modify a subpoena that requires disclosure of privileged

or other protected matter if no exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A)(iii). "A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties…." *In re REMEC*, 2008 U.S. Dist. LEXIS 47412, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008).

The authorities Plaintiff relies on to suggest the discovery sought is irrelevant are inapposite. Those cases did not involve claims for wrongful death, and so they provide no persuasive insight on whether the information is relevant to assessing damages on Plaintiffs' wrongful death claim. The Court agrees with Defendants that the information sought may be relevant to evaluating damages for Plaintiffs' wrongful death claim.

However, neither Defendants nor Plaintiffs address the impact of the Stored Communications Act on Defendants' subpoenas for the cell phone records. The Stored Communications Act ("SCA") prohibits providers from divulging private communications to certain entities or individuals. *Doe v. City of San Diego*, 2013 U.S. Dist. Lexis 74802, *7-8 (S.D. Cal. May 28, 2013); *see also Loop AI Labs Inc. v. Gatti*, 2016 U.S. Dist. LEXIS 25416, *9-10 (N.D. Cal. Feb. 29, 2016) (concluding SCA prohibited AT&T from providing the content of any requested communications in response to subpoena); *Mintz v. Mark Bartelstein & Assocs.*, 885 F. Supp. 2d 987, 991 (C.D. Cal. 2012) (same). Wireless communication providers are properly classified as an "electronic communication service" under the SCA, and thus they must not "divulge to any person or entity the contents of a communication while in electronic storage by that service" unless one of the exceptions listed in the statute apply. *Id., citing Mintz*, 885 F. Supp.2d 987, 991 (C.D. Cal. 2012); 18 U.S.C. § 2702(a)(1) & (b). None the exceptions in section 2702(b) apply. It does not appear Defendants are the addressee or recipient of the Nehads' or Decedent's communications. Even if they were, then Defendants would already have possession of those communications and would not need to subpoena them. Defendants do not have Plaintiffs' or the Decedent's consent or the consent of those

16

15-CV-1386 WQH NLS

individuals with whom the Nehads or Decedent communicated.  The remaining exceptions plainly do not apply.

The SCA also prohibits a provider from producing "subscriber information" (such as the date, time originating and receiving telephone numbers, or duration of the calls) to governmental entities in cases such as this.[3]  *See Doe v. City of San Diego,* 2013 U.S. Dist. Lexis 74802 at *13-14; 18 U.S.C. § 2702(c)(6); 18 U.S.C. § 2711(4).  "Importantly, '[t]he SCA does not contain an exception for civil discovery subpoenas.'" *Doe v. City of San Diego,* 2013 U.S. Dist. Lexis 74802 at *11 (*quoting Mintz,* 885 F. Supp. 2d at 991 (citing cases)).  Defendants are governmental entities within the meaning of the SCA, and the non-governmental defendant is represented by a governmental entity.  Thus, the SCA prohibits Sprint from disclosing any of the records sought in response to Defendants' subpoenas.

The SCA does not, however prevent Defendants from requesting the Plaintiffs' phone records through other means, such as by serving a request for production of such documents through Rule 34.  *Mintz*, 885 F. Supp. 2d at 994.  Those records would be in Plaintiffs' "control" because they have the legal right to obtain them from Sprint.  *Id.*

Accordingly, the Court **GRANTS** Plaintiffs' motion for a protective order to prohibit the production of records in response to the subpoenas issued seeking Decedent's and the Nehads' cellphone records.  Those subpoenas are quashed in their entirety.

**III.   Conclusion**

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to compel further responses to their discovery requests.  The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for protective order regarding the medical and mental health records and communication records.  It is

---

[3] The SCA does allow governmental entities to obtain subscriber information and content of communications in certain situations the Court deems not applicable here.  *See* 18 U.S.C. § 2703.

**ORDERED**:

1. Plaintiffs must provide further responses and production to Request Numbers 1, 2, 3, and 4, subject to the protections of a protective order, and only for the period from 2003 to the present.
2. Plaintiffs must provide further responses and production to Request Numbers 5, 6, 7, and 8 regarding proceedings only between Decedent and his family.
3. Plaintiffs must provide further responses and production to Request Numbers 9, 10, and 11.  As to Request No. 9, Plaintiffs are only required to provide further responses regarding health insurance to the extent such insurance was used for medical expenses incurred as a result of the incident.
4. Plaintiffs must provide further responses to Request Numbers 12, 13, 14, and 15.
5. Plaintiffs are not required to provide a further response to Request Number 16.
6. The subpoenas to third parties for medical and mental health records (Street Decl., Exhs. T, U, V, W, X) shall be limited to records from January 1, 2003 to the present, and the records shall be produced subject to the protections of a protective order.
7. The parties must prepare and submit a joint proposed protective order to cover the documents and information produced in response to the requests and subpoenas seeking Decedent's medical and mental health records.  They must submit the proposed protective order by **April 25, 2016**.

/
/
/
/
/

8. The subpoenas to third parties for the Nehads' and Decedent's phone records (Street Decl., Exhs. Y, Z, and AA) are quashed in their entirety.

**IT IS SO ORDERED.**

Dated: April 11, 2016

Hon. Nita L. Stormes
United States Magistrate Judge