UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.R. NEHAD, an individual, K.R. NEHAD, an individual, ESTATE OF FRIDOON RAWSHAN NEHAD, an entity,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>NEAL N. BROWDER, an individual, and DOES 1 through 10, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 15-CV-1386 WQH NLS<br><br>**ORDER DETERMINING DISCOVERY DISPUTE NO. 2**<br><br>(Dkt. No. 68) |

　　　　Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 2. The parties dispute whether Defendants should be compelled to provide further responses and information to certain of Plaintiffs' discovery requests, which fall within the following five general categories: (1) Officer Neal Browder's ("Browder") training and personnel records; (2) Browder's medical and psychological records; (3) body camera videos from other April 2015 incidents involving Fridoon Rawshan Nehad ("Decedent") and the San Diego Police Department ("SDPD"); (4) the SDPD's investigations of this shooting incident and other shootings; and (5) what the parties generally describe as "other issues." (Dkt. No. 68.) For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion to compel

Defendants to provide further responses to their requests for production and interrogatories.

## I. Background

On April 30, 2015, San Diego Police Officer Neal Browder fatally shot Fridoon Nehad ("Decedent"). (Dkt. No. 68 at 4.) The parents of Decedent and Decedent's Estate ("Plaintiffs") filed this civil rights action under 42 U.S.C. section 1983. They allege in their operative Second Amended Complaint constitutional claims of excessive force, violation of the Nehads' liberty interest in the companionship of their son, a *Monell*[1] claim challenging the SDPD's investigation procedures, a supervisory liability claim against Police Chief Shelley Zimmerman, state law civil rights claims, and claims for assault and battery, negligence, and wrongful death. (Dkt. No. 20.)

The parties are in the discovery phase. They exchanged discovery requests, objections, and responses, as well as issued subpoenas on third parties. They disagreed on a number of requests, and despite meeting and conferring they were unable to resolve their dispute. Plaintiffs now ask the Court to issue an order compelling Defendants to provide further responses and production to approximately forty separate requests for production and interrogatories. The Court deems the dispute timely filed for determination.[2]

## II. Legal Standard

Unless otherwise limited by court order, the scope of discovery is as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties'

---

[1] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).
[2] Plaintiffs technically filed this dispute one day past the deadline because Plaintiffs inadvertently forgot to count "leap day" (Feb. 29th) when they calculated the deadline. (Dkt. No. 78.) The Court thus exercises its discretion to determine the parties' dispute on the merits.

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Once the party seeking discovery establishes that the request meets this relevancy requirement, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) (*citing DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) and *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). With these principles in mind, the Court turns to the substance of the parties' dispute. The Court focuses on those arguments and objections that merit discussion. To the extent the Court does not specifically address other objections, the Court finds those objections to be boilerplate or otherwise lack merit and thus they are overruled.

### III. Discussion

        **a. Officer Browder's Training And Personnel Records (RFP Nos. 12, 13, 46, 48, 56, 57, 58, 59, 63, 65); And Officer Browder's Medical And Psychological Records (RFP Nos. 49, 50, 51, 52; and Interrog. Nos. 1, 2, 3, 4, 5)**

Plaintiffs contend these records are critical to help explain what was going through Browder's mind and whether he acted reasonably and consistent with his training when he shot the Decedent. (Dkt. No. 68 at 3.) Plaintiffs contend the official information privilege does not apply because Defendants' declarations in support of the privilege are insufficient. (Dkt. No. 68 at 5-6.)

Defendants object on grounds the information is irrelevant to the extent they seek information about instances that are too remote in time. They argue Browder has been on the force for nearly three decades, and so some of the records contain irrelevant subject matters or lack sufficient probative value. (Dkt. No. 68 at 14.) They also object on

grounds of privacy, and intertwine their privacy assertion with their argument that the information is protected by the official information privilege. (Id. at 14-15.) They contend a protective order will certainly help provide protection for Defendants, but that some aspects of the discovery sought weigh in favor of non-disclosure. (Id. at 15.) Defendants do not specify exactly which portions of the discovery weigh in favor of non-disclosure. Instead, they broadly assert that Plaintiffs do not need Browder's personnel file, and that Plaintiffs already have all the training materials needed for a jury to understand how Browder was trained to assess the reasonableness of his actions. They contend the requests seeking Browder's psychological and medical file are overbroad fishing expeditions that seek irrelevant information because Plaintiffs do not contend he had any psychological or medical issues that contributed to his alleged unreasonable behavior. (Dkt. No. 68 at 16.)

The Court finds Browder's personnel records are relevant, as they will aid in assessing Plaintiff's claims regarding whether Browder acted reasonably when he shot the Decedent. (RFP 12, 46, 48.) The Court overrules Defendants' objections that the request for his personnel records is overbroad as to time-frame. Even though Browder is a twenty-eight year veteran of the force and thus his personnel records may be extensive, Defendants do not articulate why information about his earlier years on the force would not provide insight into his background. Defendants likewise do not propose a specific limitation on the time-frame or explain why such a limitation would be warranted. The Court also finds Plaintiffs' requests for training materials seek relevant information and are appropriate to the extent the materials were used by or applied to Browder, as these too will aid in assessing whether Browder acted reasonably. (RFP 56, 57, 58, 59, 63, 65.) However, Plaintiffs' request for any complaints made against Browder (RFP 13) is overbroad in scope and not reasonably tailored to the claims in this case. Accordingly, that request must be narrowed to any complaints made against Browder that are similar to the complaint made in this case.

Plaintiffs' requests for Browder's medical and psychological records are also

1  overbroad in scope.  Plaintiffs contend they need Browder's medical and psychological
2  records to determine what was going through Browder's mind when he encountered the
3  Decedent at the bookstore.  In support, Plaintiffs cite to *Hutton v. City of Martinez*,
4  wherein the court ordered an officer's medical records to be produced in a civil rights
5  case. *Id.,* 219 F.R.D. 164, 166 (N.D. Cal. 2003).  But *Hutton* is readily distinguishable.
6  In *Hutton*, the court held the officer's medical records were directly relevant because the
7  plaintiff claimed the officer shot him because his poor physical condition prevented him
8  from chasing the plaintiff on foot.  *Id.* at 167.  In contrast here, Plaintiffs do not contend
9  Browder had any psychological or medical issues that contributed to his alleged
10 unreasonable behavior.  (Dkt. No. 20 (Second Amend. Compl.), *passim.*)  They do,
11 however, allege that Browder was not tested for drugs or alcohol the night of the shooting
12 or thereafter.  (Id. at ¶¶ 7, 15, 54.)

13        Balancing Plaintiffs' stated interests for Browder's medical and psychological
14 records against Browder's right to privacy, the Court concludes that these requests must
15 be narrowed in scope.  *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. 1995)
16 (concluding that "only those mental or psychological records which concern the incident
17 at issue, prior episodes of violence, or the officers' propensity for violence of the type
18 alleged in the complaint are relevant.")  Plaintiffs' requests for Browder's medical
19 records shall be narrowed to one year preceding the incident though the date of the
20 incident. (RFP 49.)  Plaintiffs' requests for Browder's mental or psychological records
21 are limited to one year preceding the incident up through the date of the incident, unless
22 the requests themselves were already sufficiently narrowed to a timeframe shorter than
23 that.  (RFP 50, 52 and Interrog. 1, 2, 3, 4, 5.)  The request for results of drug or alcohol
24 tests conducted of Browder after the shooting is appropriate in terms of timeframe.  (RFP
25 51.)  The aforementioned narrowed requests thus seek relevant information that must be
26 produced unless Defendants' other objections should be sustained.

27        Defendants assert the information sought by many of these requests are protected
28 by the official information privilege and they submit declarations in support of those

assertions. (Dkt. Nos. 82-1; 82-2; 82-4.) Plaintiffs argue the documents are not protected by privilege and are similar to documents that courts have ordered produced in other cases.

Federal law regarding privilege applies to federal question cases. Fed. R. Evid. 501; *see Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1492 (9th Cir. 1989). Federal common law recognizes a qualified privilege for official information. *Kerr v. U.S. Dist. Court for Northern Dist.*, 511 F.2d 192, 198 (9th Cir. 1975). Official information protected by this qualified privilege includes government personnel files. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990). The official information privilege is subject to the competing interests of the requesting party, and is "subject to disclosure especially where protective measures are taken." *Kerr,* 511 F.2d at 198. Courts embrace "*a balancing approach that is moderately pre-weighted in favor of disclosure.*" *Kelly v. San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987) (emphasis in original) (ordering disclosure of law enforcement documents subject to a protective order to a plaintiff in a § 1983 action).

The party asserting the official information privilege must invoke it by name and make a substantial threshold showing of privilege. *Id*. at 669. To make such a showing, a "party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter." *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (*citing Kerr*, 511 F.2d at 198). The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality,
> (2) a statement that the official has personally reviewed the material in question,
> (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer,
> (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests,

> (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Kelly*, 114 F.R.D. at 670.

A "general assertion" that a law enforcement organization's internal investigatory system "'would be harmed by disclosure of the documents is insufficient' to meet the threshold test for invoking the official information privilege." *Soto*, 162 F.R.D. at 614 (*quoting Chism v. County of San Bernardino*, 159 F.R.D. 531, 534-535 (C.D. Cal. 1994)). A "general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure." *Soto*, 162 F.R.D. at 614 (*citing Miller*, 141 F.R.D. at 300-301; *Kelly*, 114 F.R.D. at 672). The party resisting discovery "must *specifically* describe how disclosure of the requested documents in that particular case … would be harmful." *Soto*, 162 F.R.D. at 614 (emphasis in original) (*citing Miller*, 141 F.R.D. at 300-301).

Here, the Court finds Defendants' declarations fails to adequately satisfy the last three threshold requirements to invoke the official information privilege. The declarants' statements in support of the official information privilege are nearly identical to those statements contained in the declaration submitted in *Doe v. Ramirez*, 12cv689-MMA-DHB, which the court found insufficient. *Compare e.g.,* Dkt. No. 68-1 Exh. A (Decl. of David Ramirez in *Doe v. Ramirez*) ¶¶ 4-14, *with* Dkt. No. 82-1 (Decl. of Mike Holden), ¶¶ 12-19; Dkt. No. 82-2 (Decl. of David Ramirez), ¶¶ 12-19; Dkt. No. 82-4 (Decl. of David Ramirez) ¶¶ 12-19. There, the court observed that the City heavily relied on a claim that the disclosure of the personnel files and internal affairs files would have a chilling effect on the Department's internal investigation process, and that this "chilling effect" argument has been considered and rejected by numerous courts. (Dkt. No. 68-2 at 20, Exh. B.) The court cited to a number of cases in support, including *Kelly*, 114 F.R.D. at 672, which stated that "defendants cannot meet their burden simply by asserting, *without empirical support*, that officers will refuse to cooperate with Internal Affairs investigations if their statements are subject to even limited disclosure." *Id.* (citing cases

1  and quoting *Kelly*).  This Court agrees with the reasoning in *Doe v. Ramirez*.  The
2  declarations submitted on behalf of Defendants only provide general assertions of harm;
3  they fail to demonstrate why disclosing the information sought under a carefully crafted
4  protective order to protect the confidentiality of the information would harm a significant
5  governmental interest, and they fail to support their assertions of how much harm would
6  be done if such information were disclosed under a protective order.

7  Under *Kelly*, Defendants did not make a threshold showing of the official
8  information privilege.  Because it did not meet this requirement, the Court need not apply
9  the balancing test from *Kelly*.  *See Kelly*, 114 F.R.D. 663.  Accordingly, Defendants'
10 objections based on this privilege is overruled.

11 The Court recognizes Browder's privacy concerns in the information maintained in
12 these files, and that those privacy rights are not inconsequential.  On balance, however,
13 such interests do not outweigh Plaintiffs' need to discover important information to their
14 claims.  *See, e.g., Soto*, 162 F.R.D. at 617 (collecting cases and concluding that the
15 privacy interests of an officer-defendant does not outweigh a civil rights plaintiffs' need
16 to discover relevant personnel files).  Moreover, Defendants' arguments regarding
17 privacy can be addressed by an appropriate protective order, and by redacting the
18 officers' sensitive personal information to protect against potential threats to safety.
19 *Stewart v. City of San Diego*, 2010 U.S. Dist. LEXIS 124581, *8 (S.D. Cal. Nov. 24,
20 2010) ("any concerns the Defendants may have can be alleviated by an appropriate
21 protective order, as well as the redaction of any sensitive personal information (e.g.,
22 social security numbers, addresses, phone numbers, etc.)").

23 In sum, and subject to an appropriate protective order, the Court thus concludes as
24 follows.  For Browder's personnel records and training records, Defendants must provide
25 further responses insofar as the requests seek information that relate or apply to Browder.
26 (RFP Nos. 12, 46, 48, 56, 57, 58, 59, 63, 65.)  Defendants must produce documents
27 regarding complaints made against Browder only to the extent such complaints were
28 similar to the incident that occurred in this case.  (RFP 13.)   For Browder's medical and

psychological records, Defendants must provide further responses only for the one year period preceding the shooting incident through the date of the shooting incident, unless the requests themselves were already sufficiently narrowed to a timeframe less than that; and must provide a further response to the request for results of drug or alcohol tests conducted of Browder after the shooting.  (RFP Nos. 49, 50, 51, and 52, and Interrog. Nos. 1, 2, 3, 4, 5.)

### b.  Body Camera Video Requests (RFP Nos. 61 and 62)

These requests seek the reports, dash camera, body camera or other audio or video recordings of incidents from 2010 through 2015 where an SDPD officer used force on a person who suffered from mental health issues or was under the influence of drugs and/or alcohol (RFP 61), and where an SDPD officer used force on a person who was subsequently charged with obstruction of justice, failure to follow a lawful order, or other contempt of cop charges (RFP 62).

Plaintiffs contend the body camera videos of encounters between the Decedent and the SDPD during the week before the shooting are relevant to the defense's theory of the case.  Plaintiffs assert the Defendants' theory is that the Decedent was violent and dangerous and that evidence of his other encounters with the police are relevant, and yet they refuse to produce videos involving Decedent and the other officers during the week preceding the shooting.  (Dkt. No. 68 at 10-11.)  Plaintiffs contend the official information privilege does not apply because under the *Kelly* factors the investigation of those incidents are over, the videos are factual and not evaluative, and producing them will not interfere with the police department's self-evaluation process or discourage people from reporting crimes.  (Dkt. No. 68 at 11.)

Defendants object on grounds the body camera footage is not relevant to any theory in this case.  Defendants argue that while they contend Decedent has a history of being violent and dangerous, the history is relevant to the issue of damages and not liability.  (Dkt. No. 68 at 17.)

Neither party references any authority regarding their "theory of the case" arguments as to whether the information sought is relevant or discoverable.  As such, the

Court is guided by the principles set forth in Rule 26(b)(1) (*see supra*, § II (quoting Rule 26(b)(1) and setting forth the scope of discovery), and by interpreting the term "theory of the case." Black's Law Dictionary defines "theory of the case" by referencing the term "case theory," which is defined as the "particular line of reasoning of either party to a suit, the purpose being to bring together certain facts of the case in a logical sequence and to correlate them in a way that produces in the decision-maker's mind a definite result or conclusion favored by the advocate." Black's Law Dictionary (10th ed. 2014).

Here, the Court finds the body camera footage of incidents between Decedent and the SDPD during the week leading up to the incident are relevant. Defendants acknowledge that they contend Decedent had a history of being violent and dangerous, and that this is relevant to their defense to Plaintiffs' claims for damages. The footage will aid in evaluating Defendants' line of reasoning that Decedent was violent and dangerous, and thus will shed light on the parties' positions about the extent to which damages should be awarded on Plaintiffs' claims.

Defendants also aver Plaintiffs' requests are completely overbroad in scope, unduly burdensome, and seek confidential and irrelevant information. They contend it would take thousands of man-hours to search for and produce the recordings of incidents between the SDPD and individuals other than the Decedent, and that the requests seek information protected by the official information privilege. (Dkt. No. 69 at 71-74.) Plaintiffs contend the information sought is relevant to their supervisory liability claims and is not protected by privilege. (Id.)

This Court concludes that the burden to obtain the footage and recordings of incidents involving the SDPD and individuals other than Decedent outweighs its likely benefit. Plaintiffs' *Monell* and supervisory liability claims allege that the Defendants' force investigation procedures are inadequate; there are less burdensome means of obtaining information about the investigation procedures that occurred in those other cases.

As to Defendants' arguments that the information is protected by the official information privilege and confidential, the Court overrules Defendants' privilege

10

objections for the same reasons as stated earlier, and finds that an appropriate protective order can adequately address their concerns. In sum, and subject to an appropriate protective order, Defendants must produce the body camera footage from incidents only between the SDPD and Decedent that were recorded during the week preceding the shooting incident. Defendants are not required to provide further responses to these requests to the extent they relate to the SDPD and individuals other than the Decedent.

### c. SDPD Investigations

#### i. Requests For Discovery Regarding The SDPD Investigation For The Incident In This Case (RFP Nos. 11, 53; and Interrog. No. 3)

These requests seek documents pertaining to the shooting incident at the center of this case, including communications, use of force reports, internal affairs reports, homicide investigation reports, and risk management reports (RFP 11); reports from expert witnesses who were consulted regarding the shooting incident during the investigation (RFP 53); and information in response to an interrogatory seeking the identity of any expert witnesses Defendant contacted or spoke to about the shooting (Interrog. 3(City)). Plaintiffs argue they are entitled to this information because the official information privilege does not apply and because the information is relevant to prove their *Monell* and supervisory liability claims.

In response to RFP No.11, and subject to objections and assertion of the official information privilege, Defendants produced a number of documents, reports, photographs, videos, lab files, and recordings. In response to RFP No. 53, Defendants argued the expert witness reports are protected by the attorney-client and work product privileges. In response to Interrogatory No. 3, Defendants stated they will produce the requested information in accordance with the scheduling order, which requires them to disclose expert witnesses by May 31, 2016.

To the extent Defendants withheld documents based on the official information privilege, for the reasons stated above, the privilege does not apply and their concerns may be addressed by an appropriate protective order. The Court also notes that the

1  Defendants asserted the deliberative process privilege for any investigations that are still
2  ongoing, including the internal affairs investigation of the shooting of the Decedent.
3  (Dkt. No. 82-1 at ¶ 2.)  Courts have held that the deliberative process privilege, however,
4  is "inappropriate for use in civil rights cases against police departments." *Soto*, 162
5  F.R.D. at 612; *see also e.g., Pittman v. County of San Diego*, 2010 U.S. Dist. LEXIS
6  97569 (S.D. Cal. Sept. 17, 2010).  The deliberative process privilege should "be invoked
7  only in the context of communications designed to directly contribute to the formulation
8  of important public policy," and thus "would offer no protection at all to most of the
9  kinds of information police departments routinely generate."  *Id.*  Courts thus reject use
10 of the deliberative process privilege as applied to internal affairs investigations, as well as
11 records of witness or police officer statements because they are of the type that are
12 routinely generated.  *Id.*   This Court agrees with the reasoning for finding the
13 deliberative process privilege inapplicable, and overrules Defendants' objections based
14 on the privilege.
15       As to RFP No. 53, the Court agrees with Defendants' assertion that the information
16 sought from consulting experts is protected from disclosure.  Fed. R. Civ. P. 26(b)(4)(D)
17 ("Ordinarily, a party may not … discover facts known or opinions held by an expert who
18 has been retained or specially employed by another party in anticipation of litigation or to
19 prepare for trial and who is not expected to be called as a witness at trial").  Plaintiffs
20 have not shown any "exceptional circumstances" under which it would be "impractical
21 for them to obtain facts or opinions on the same subject by other means."  Id.
22 26(b)(4)(D)(ii).  Plaintiffs are not entitled to this discovery.  As to Interrogatory No. 3,
23 the Court further agrees with Defendants that Plaintiffs may obtain the identities of expert
24 witnesses in accordance with the Scheduling Order, and Defendants need not produce
25 such information any earlier than the date set by the Court.  (Dkt. No. 34 at 2 ("By May
26 31, 2016, each party shall comply with the disclosure provisions in Rule 26(a)(2)(A) and
27 (B)….").
28       Accordingly, Defendants must provide further responses to RFP No. 11 to the

1  extent it has withheld any responsive documents based on the official information
2  privilege.  Defendants are not required to provide a further response to RFP No. 53.
3  Defendants are not required to provide a further response to Interrogatory No. 3 because
4  the information sought will be provided on the date of expert witness disclosures on May
5  31, 2016.

### ii. Requests For Discovery Regarding The SDPD Investigations For Other Incidents (RFP Nos. 32, 33, 34, 35, 36, 38, 54, 60; and Interrog. Nos. 4, 5)

These requests seek information, documents, and reports related to officer-involved shootings from 2010 to the present (RFP 32, 33, 36, 60), including investigations of those shootings (RFP 34), documents pertaining to the Defendants' use of force investigation process (RFP 35), correspondence between Defendants and the Citizens' Review Board about officer-involved shootings (RFP 38), expert witness reports from experts who were consulted while investigating officer-involved shootings (RFP 54), the identification of officers who were disciplined for their involvement in officer-involved shootings (Interrog. 4 (City)), and the identification of expert witnesses who worked or consulted on shootings (Interrog. 5 (City)).

Plaintiffs contend information about other police shooting investigations are relevant and necessary to their *Monell* and supervisory liability claims.  They contend they must have evidence of other investigations to demonstrate the SDPD's investigation procedures are inadequate.  (Dkt. No. 68 at 11, *citing* in support *Rehberg v. City of Pueblo*, 2011 WL 2180659, at *4-5 (D. Colo. June 2, 2011); *Constantino v. City of Atlantic City*, 2015 WL 1609693 (D. N.J. Apr. 10, 2015).  They contend the official information privilege does not apply.

Defendants object on grounds these requests are overbroad and unduly burdensome.  (Dkt. No. 68 at 17.)  Defendants further object on the ground that the requests may encompass records protected by privilege or privacy rights.  They contend the documents sought relate to individuals unrelated to this case, and so disclosing the

documents would invade these individuals' privacy rights and endanger legitimate law enforcement interests. (Id.) Defendants also object to producing information about the expert or consultant reports or information to the extent it is protected by the attorney-client privilege and work product doctrine.

This Court agrees with Plaintiffs that the requests for documents and information pertaining to investigations conducted in officer-involved shootings from 2010 to the present are relevant to their *Monell* and supervisory liability claims. Plaintiffs contend the SDPD has a "*de facto* policy, custom and practice of not properly investigating its officers' uses of force." (Dkt. No. 20 at ¶ 79.) They contend the SDPD's allegedly deficient investigation procedures are an unconstitutional policy, custom and practice under *Monell*. (Id. at ¶ 80.) While a municipal policy "may be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded,' [a] plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." *Lawson v. City of Seattle*, 2014 U.S. Dist. LEXIS 55883, *46 (W.D. Wash. Apr. 21, 2014), *quoting Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001) (emphasis in original); *see also Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.")) Thus, information about Defendants' use of force investigations in officer-involved shooting incidents is relevant to Plaintiffs' *Monell* claims.

However, Plaintiffs' requests that seek all documents related to officer-involved shootings (RFP 32, 33, 36, 60) are overbroad because they do not seek information tailored to their claims that the investigation procedures are inadequate. Plaintiffs also do not sufficiently establish they are entitled to expert witness reports from experts who were consulted while investigating officer-involved shootings from 2010 to the present,

1  the identification of those expert witnesses, or the identification of officers who were
2  disciplined for their involvement in officer-involved shootings.  (RFP 54 and Interrog.
3  Nos. 4 and 5 (City).)
4       The Court overrules Defendants' objections based on the official information
5  privilege and the deliberative process privilege for the same reasons as stated earlier in
6  this order.  *See e.g., Williams v. County of Alameda*, 2013 U.S. Dist. LEXIS 122866, *6
7  (N.D. Cal. Aug. 27, 2013) (citing cases rejecting "chilling effect" arguments that
8  disclosure would lead to a breakdown of the IA investigation system, and citing cases
9  where courts have rejected such reasoning.).   The Court also overrules Defendants'
10 privacy objections on grounds that a protective order will adequately protect those other
11 officers' and individuals' privacy interests.  Defendants may also elect to redact from
12 these files the officers' and individuals' sensitive information (e.g., addresses, phone
13 numbers, etc.).
14      Defendants contend that to respond to these requests would be unduly burdensome
15 because the search would "yield dozens of investigations, thousands of pages of
16 documents" and that "[t]o review such investigations would require thousands of man-
17 house to copy, sift through, redact etc."  (Dkt. No. 68 at 17.)  The Court has considered
18 Defendants' burden argument, including whether the burden or expense of responding to
19 these requests would outweigh its likely benefit, and whether it can be obtained from
20 some other source that is more convenient, less burdensome, or less expensive.  Fed. R.
21 Civ. P. 26(b)(1) and (b)(2)(C).  Though the Court recognizes undertaking such a task will
22 indeed impose a burden, in considering the importance of the issues at stake in the action
23 and the importance of this discovery in resolving the issues, on balance the Court finds
24 information about Defendants' investigations in officer-involved shooting incidents is
25 relevant and proportional to the needs of the case and thus must be produced.  And while
26 Defendants aver responding to these requests will yield "dozens" of investigations, it is
27 far less than the number of internal affairs files that have been required to be produced in
28 other cases.  *See e.g.*, *Constantino*, 2015 WL 1609693 (under the particular

1   circumstances of that case, ordering disclosure of approximately 2,000 internal affairs
2   department files over 10 year period on a claim against the city of failure to properly
3   investigate and discipline officers).  The Court does find, however, that in considering the
4   burden imposed by these requests, they must be narrowed in scope and timeframe.
5   Accordingly, these requests will be narrowed to only seek responsive documents from the
6   past three years (as opposed to five years), and to the internal affairs/investigation files
7   for incidents involving officer-involved shootings that resulted in physical injury or death
8   (as opposed to any incident in which an officer fired his or her weapon).

9        Accordingly, subject to an appropriate protective order, Defendants must provide
10  further responses to the following: Plaintiffs' requests for documents pertaining to
11  investigations, including internal affairs files, of officer-involved shootings from 2013 to
12  the present (RFP 34), the Defendants' use of force investigation process from 2010 to the
13  present, but only as it pertains to officer-involved shootings (RFP 35), and
14  correspondence between Defendants and the Citizens' Review Board about officer-
15  involved shootings from 2010 to the present (RFP 38).

16       Defendants are not required to provide further responses to Plaintiffs' requests for
17  documents pertaining to officer-involved shootings from 2010 to the present, except to
18  the extent that the investigations or internal affairs files fall within the scope of these
19  requests (RFP 32 33, 36, 60).  Defendants are also not required to provide further
20  responses to the requests for expert witness reports from experts who were consulted
21  while investigating officer-involved shootings from 2010 to the present (RFP 54) or to
22  the interrogatory seeking the identification of those expert witnesses (Interrog. No. 5
23  (City)) or to the interrogatory seeking the identification of officers who were disciplined
24  for their involvement in officer-involved shootings from 2010 to the present (Interrog.
25  No. 4(City)).

26       **d. Documents Relating To Codes For 911 Calls, And For Dispatching**
27       **Officers To Certain Types Of Code Calls Or Responding To 911 Calls**
28       **(RFP Nos. 6, 7, 27, 28)**

Case 3:15-cv-01386-WQH-NLS   Document 83   Filed 05/10/16   PageID.2132   Page 17 of 20

1  Plaintiffs move to compel further responses to their requests for documents related
2  to why 911 calls are classified as Code 1, Code 2 or Code 3 (RFP 6); documents related
3  to any other 911 calls on April 29-30, 2015 that were classified as Code 1, Code 2 or
4  Code 3 (RFP 7); documents related to Defendants' policies and procedures for
5  dispatching officers in response to a Code 3 or "hot" 911 call (RFP 27); and documents
6  related to policies and procedures for responding to a 911 call (RFP 28).  They contend
7  these documents are relevant to determine whether Browder acted reasonably when he
8  shot the Decedent.  They contend this information is relevant to assess whether Browder
9  violated SDPD policy by, as they allege, responding to the 911 call without activating his
10 light-bars and siren, by not taking cover when he saw the Decedent, and by responding to
11 the call first though he was not assigned to it.  (Dkt. No. 68 at 13.)  Plaintiffs aver the
12 official information privilege does not apply because the assertions of harm are
13 conclusory and the declaration does not explain why producing these documents under a
14 protective order would not protect the police department's interests.  (Id.)

15  Defendants object on grounds that the information must be maintained as
16 confidential or else it will pose a great security risk.  In support, they argue that the Police
17 Department uses these codes to plan how to respond to certain offenses, and if this
18 information is not kept confidential, those strategies and plans become meaningless.
19 They also argue offenders who learn of these codes may then use this information to
20 disrupt the department's operations and endanger officers responding to those calls.
21 (Dkt. No. 68 at 18.)

22  Having reviewed the declaration submitted in support of their assertion of
23 privilege, and for the same reasons as stated earlier in this order, the official information
24 privilege and likewise the law enforcement investigatory privilege do not apply.
25 Defendants only assert a general risk of harm may occur; they do not explain why the
26 information sought in these requests cannot be adequately protected as confidential under
27 an appropriate protective order.  A protective order may serve to maintain the information
28 as confidential and protect against concerns of security risks.  Accordingly, subject to a

17

15-CV-1386 WQH NLS

protective order, Defendants must provide further responses to RFP Nos. 6, 7, 27, and 28.

### e. Communications Between The SDPD And Dumanis, And Between The SDPD And The Police Officer's Association, That Relate To The Shooting Incident (RFP Nos. 66 and 67)

Plaintiffs aver these requests seek documents relating to the shooting that is at the center of this case. They contend further responses must be compelled because Defendants' only objection is that the request is duplicative of a prior request, and that Defendants agreed to produce responsive documents but they have not yet been produced. Defendants respond that they are diligently working to provide responsive documents, and that the parties have agreed to certain search terms to facilitate a proper response, and the records are in the process of being reviewed for protected and irrelevant information. (Dkt. No. 69 at 83.)

Because Defendants do not oppose producing responsive to these requests, the Court grants Plaintiffs' request compel further responses to RFP Nos. 66 and 67.

## IV. Conclusion

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion to compel further responses and production to their requests for production and interrogatories. **IT IS ORDERED**:

1. By **May 24, 2016**, the parties must submit a joint carefully crafted proposed protective order governing the documents, information and tangible things that are to be produced subject to such a protective order. The parties should also meet and confer to consider whether to craft the provisions of the protective order so that it protects confidential documents and information that will be produced not only in response to the discovery requests discussed in this order, but also as to any other information that is produced in the course of this litigation.
2. As to the requests for Browder's personnel records and training records, Defendants must provide further responses insofar as the requests seek

information that relate or apply to Browder.  (RFP 12, 46, 48, 56, 57, 58, 59, 63, 65.)  Defendants must produce documents regarding complaints made against Browder only to the extent such complaints were similar to the incident that occurred in this case.  (RFP 13.)

3. As to Browder's medical and psychological records, Defendants must provide further responses for the one year period leading up to the shooting incident, unless the requests themselves were already sufficiently narrowed to a timeframe less than that, and provide a further response to the request for results of drug or alcohol tests conducted of Browder after the shooting. (RFP 49, 50, 51, 52, and Interrog. 1, 2, 3, 4, 5.)

4. Defendants must produce the body camera footage from incidents between the SDPD and Decedent that were recorded during the week preceding the shooting incident.  (RFP 61, 62.)  Defendants are not required to provide further responses to these requests to the extent they relate to the SDPD and individuals other than the Decedent.  (Id.)

5. Defendants must provide further responses to RFP 11 to the extent they withheld responsive documents based on the official information privilege. Defendants are not required to provide a further response to RFP 53. Defendants are not required to provide a further response to Interrogatory 3 because the information sought will be produced on the date of expert witness disclosures on May 31, 2016.

6. Defendants must provide further responses to Plaintiffs' requests for documents pertaining to investigations, including internal affairs files, of officer-involved shootings that resulted in physical injury or death from 2013 to the present (RFP 34); the Defendants' use of force investigation process from 2010 to the present but only as it pertains to officer-involved shootings (RFP 35); and for correspondence between Defendants and the Citizens' Review Board about officer-involved shootings from 2010 to the

present (RFP 38).

7. Defendants are not required to provide further responses to Plaintiffs' requests for documents pertaining to officer-involved shootings from 2010 to the present, except to the extent that the investigations or internal affairs files from 2013 to the present fall within the scope of these requests. (RFP 32, 33, 36, 60.) Defendants are not required to provide further responses to the requests for expert witness reports from experts who were consulted while investigating officer-involved shootings from 2010 to the present or to the interrogatory seeking the identification of those expert witnesses or to the interrogatory seeking the identification of officers who were disciplined for their involvement in officer-involved shootings from 2010 to the present. (RFP 54 and Interrog. Nos. 4 and 5 (City).)

8. Defendants must provide further responses to RFP 6, 7, 27, and 28.

9. Defendants must provide further responses to RFP 66 and 67.

**IT IS SO ORDERED.**

Dated: May 10, 2016

*/s/ Nita L. Stormes*
Hon. Nita L. Stormes
United States Magistrate Judge