UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.R. NEHAD, an individual, K.R. NEHAD, an individual, ESTATE OF FRIDOON RAWSHAN NEHAD, an entity,<br><br>  Plaintiffs,<br><br>v.<br><br>NEAL N. BROWDER, an individual, and DOES 1 through 10, inclusive,<br><br>  Defendants. | Case No.: 15-CV-1386 WQH NLS<br><br>**ORDER DETERMINING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 3**<br><br>(Dkt. Nos. 102, 104) |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 3. (Dkt. Nos. 102, 104.) Plaintiffs move to compel responses and production to 22 requests that seek documents pertaining to a second shooting incident involving Officer Browder ("Browder"). Defendants oppose Plaintiffs' requests based on relevance. For the reasons explained below, the Court **DENIES** Plaintiffs' requests to compel responses and production.

I. **Background**

The parties and the Court are familiar with the background of this case, and so the Court only briefly recounts pertinent background information here. On April 30, 2015, Browder fatally shot Fridoon Nehad. Browder was subsequently placed back on active

patrol duty.

On February 20, 2016, Browder conducted a sweep of an apartment during a routine probation search and compliance check. (Dkt. No. 102-1 at ¶ 2.) During that sweep, he came upon a dark room. (Id. at ¶ 3.) When he tried to activate the light attachment connected to his firearm, he unintentionally discharged one round from his firearm. (Id. at ¶ 4.) According to a news article submitted by Plaintiffs about the incident, the bullet hit the right side of a baby's crib, which was empty. (Dkt. No. 102-3 at 3.) Browder's unintentional discharge of his firearm did not result in any physical injury. (Id.)

Plaintiffs propounded 22 discovery requests seeking documents and information pertaining to the February 20, 2016 incident, including incident reports, performance reviews, disciplinary actions and investigation reports. (Dkt. No. 102 at 3.) Defendants object to Plaintiffs' requests on grounds of relevance.

## II.  Discussion

Plaintiffs contend information about the February 20, 2016 incident is relevant to their *Monell* and supervisory liability claims. They contend this information will help determine whether the SDPD changed or improved its policies and practices regarding investigations of shootings and discipline. (Dkt. No. 102 at 3, 5-8.) In support, Plaintiffs point to excerpts from Chief Zimmerman's recent deposition testimony, wherein she stated Browder was taken off patrol duties following the February 20, 2016 incident, and one of the reasons Zimmerman decided to take him off patrol was because Browder had now been involved in two separate instances where he discharged his weapon.[1] (Dkt. No. 104 at 3-4.)

Defendants contend information about Browder's unintentional discharge of his

---

[1] Plaintiffs submitted supplemental briefing regarding the information they obtained from Zimmerman's deposition transcript. Defendants objected to the supplemental briefing based on timeliness and relevance, and submitted their response as well. The Court has considered the parties' supplemental briefing in this instance, however, the parties are notified that no future supplemental briefing will be considered without first obtaining leave of Court.

2

1  firearm is irrelevant to Plaintiffs' *Monell* and supervisory liability claims.  (Dkt. No. 102
2  at 10.)  Browder's unintentional discharge of his firearm did not involve the use of force
3  (i.e., the "amount of effort required by police to compel compliance by an unwilling
4  subject") and did not involve the use of deadly force.  (Id., *citing Internat'l Assoc. of*
5  *Chiefs of Police, Police Use of Force in America* (Va. 2011).  Defendants assert that
6  during this incident, Browder did not encounter a suspect, did not intend to fire his gun,
7  did not attempt to compel compliance from an unwilling suspect, and the incident did not
8  involve any type of constitutional deprivation.  Defendants further contend that as a
9  result, the incident was not investigated as an incident involving the use of force.  (Id. at
10 10-11.)  Defendants further argue that Zimmerman's deposition testimony does not
11 change this irrelevant information into relevant and discoverable information.  (Dkt. No.
12 104 at 5-6.)

13        "Unless otherwise limited by court order, the scope of discovery is as follows:
14 Parties may obtain discovery regarding any nonprivileged matter that is relevant to any
15 party's claim or defense and proportional to the needs of the case, considering the
16 importance of the issues at stake in the action, the amount in controversy, the parties'
17 relative access to relevant information, the parties' resources, the importance of the
18 discovery in resolving the issues, and whether the burden or expense of the proposed
19 discovery outweighs its likely benefit. Information within this scope of discovery need
20 not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

21        Having considered the parties' arguments and authorities, the Court concludes
22 information about the February 20, 2016 incident does not fall within the scope of
23 permitted discovery because it is not relevant to Plaintiffs' claims.  In their *Monell* claim,
24 Plaintiffs allege the "SDPD's investigation of Fridoon's shooting was grossly
25 inadequate," and that the "SDPD has a *de facto* policy, custom and practice of not
26 properly investigating its officers' uses of force."  They contend that this "custom, policy
27 and practice of deficient use of force investigations is entrenched in the SDPD" and that
28 it "created an environment in which police officers … act with impunity and where using

excessive force is commonplace and encouraged." (Dkt. No. 20 at ¶¶ 79, 80.)

While a party who alleges a *Monell* claim may discover evidence of a policy or custom based on multiple incidents, requests for such discovery should not be overbroad and instead should be appropriately tailored to the allegations of the *Monell* claims.  (*See* Order, Dkt. No. 83 at 14-16 (*citing, inter alia, Lawson v. City of Seattle*, 2014 U.S. Dist. LEXIS 55883, *46 (W.D. Wash. Apr. 21, 2014), *quoting Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001), and narrowing Plaintiffs' requests to seek information about officer-involved shootings that resulted in physical injury or death so that the discovery is tailored to Plaintiffs' claims that the use of force investigation procedures are inadequate).

Here, Plaintiffs' *Monell* claims are based on allegations that the SDPD's policies, customs and practices of investigating use of force and excessive force is inadequate. (Dkt. No. 20 at ¶¶ 79, 80.)  Evidence of shootings that involved use of force and resulted in physical injury or death may bear on Plaintiffs' *Monell* claims.  But information about an officer's accidental discharge of his weapon in a setting that did not involve the use of force is too attenuated from Plaintiffs' claims.  Plaintiffs do not allege that the SDPD conducts inadequate investigations into incidents where an officer accidentally discharges his weapon and where no use of force was involved.  (Dkt. No. 20.)  As such, the information Plaintiffs seek about the February 20, 2016 incident is not relevant to their claims, is not proportional to the needs of the case, and would not add to the inquiry in resolving the issues raised by Plaintiffs' claims.  Fed. R. Civ. P. 26(b)(1).

Information about Browder's unintentional discharge of his firearm also is not relevant to Plaintiffs' supervisory liability claims.  In support of their supervisory liability claim, Plaintiffs allege that "Zimmerman knew that the SDPD's force investigation procedure was deficient, a whitewash designed to exonerate the officers," that "[t]he force investigation process is still a sham, designed to attack the victim, exonerate the officers and cover-up the truth."  They allege that these unconstitutional investigations "encouraged officers to violate the law, leading to unjustified shootings like Fridoon's"

and as a result "more people have been injured and killed by unlawful police action, including Fridoon." (Id. at ¶¶ 86, 87, 90.) Discovery about Browder's unintentional discharge of his firearm would not shed light on or otherwise support Plaintiffs' supervisory liability claims. The February 20, 2016 incident did not involve use of force against any suspect or victim, and so any resulting investigation would not have been designed to attack the victim or exonerate or cover-up an officer's actions relating to injuring or killing an individual.

Nor does Zimmerman's recent deposition testimony change the analysis. Plaintiffs contend the February 20, 2016 incident is relevant to their *Monell* and supervisory liability claims because Zimmerman testified she took Browder off active patrol duty because he was involved in two separate shootings; i.e., the incident involving Fridoon and the February 20, 2016 incident. (Dkt. No. 104 at 3-4.) Thus, Plaintiffs argue, they are entitled to discover how and why Zimmerman responded differently to Browder's second incident in light of the first. (Id. at 4.)

Defendants respond that Zimmerman testified she placed Browder on administrative assignment based on Browder's mental well-being and out of concerns of his family, given the mental stress level that arises from two incidents involving a firearm discharge, from the pending litigation, and the negative media attention. (Id. at 5-6, citing excerpts from Zimmerman's deposition transcript.) They argue Plaintiffs have no good faith basis to believe otherwise, and so Plaintiffs' request is an improper fishing expedition.

The Court agrees with Defendants. As reflected in Zimmerman's testimony, she placed Browder on administrative assignment out of concern for Browder's mental well-being and the well-being of his family in light of the aforementioned factors. (Dkt. No. 104-2 at 6:7-7:1; 8:11-9:9.) Thus, information about the February 20, 2016 incident, and information about the steps Zimmerman took after Browder's unintentional discharge of his firearm, would not shed light on Plaintiffs' claims that the SDPD's use of force investigation procedures are a sham designed to exonerate officers or shield them from

discipline.

### III. Conclusion

For the forgoing reasons, the Court concludes Plaintiffs' requests for discovery about the February 20, 2016 incident are not relevant to Plaintiffs' claims. Accordingly, the Court **DENIES** Plaintiffs' motion to compel responses and production to the 22 requests for discovery regarding the February 20, 2016 incident.

**IT IS SO ORDERED.**

Dated: August 10, 2016

*/s/ Nita L. Stormes*
Hon. Nita L. Stormes
United States Magistrate Judge