MARA W. ELLIOTT, City Attorney
GEORGE F. SCHAEFER, Assistant City Attorney
JOHN RILEY, Chief Deputy City Attorney
California State Bar No. 144268
BEVERLY A. ROXAS, Deputy City Attorney
California State Bar No. 298582
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone: (619) 533-5800
    Facsimile: (619) 533-5856

Attorneys for Defendants SHELLEY ZIMMERMAN, NEAL N. BROWDER AND CITY OF SAN DIEGO

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.R. NEHAD, an individual, K.R. NEHAD, an individual, ESTATE OF FRIDOON RAWSHAN NEHAD,<br><br>Plaintiffs,<br><br>v.<br><br>SHELLEY ZIMMERMAN, in her personal and official capacity as Chief of Police, NEAL N. BROWDER, an individual, CITY OF SAN DIEGO, a municipality, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 15cv1386 WQH (NLS)<br><br>**DEFENDANTS SHELLEY ZIMMERMAN, NEAL N. BROWDER AND CITY OF SAN DIEGO'S SEPARATE STATEMENT IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: April 17, 2017<br>Judge: Hon. William Q. Hayes<br>Court Room: 14B<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

    Pursuant to Judge William Hayes Civil Chamber Rules, Defendants SHELLEY ZIMMERMAN, NEAL N. BROWDER and the CITY OF SAN DIEGO submit this separate statement of undisputed material facts, together with references to supporting evidence in support of their motion for summary judgment and/or partial summary judgment. All references to declarations are to the declarations contemporaneously filed with the List of Evidence.

| | **UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | | **PLAINTIFFS' RESPONSE AND EVIDENCE** |
|---|---|---|---|
| 1. | Mr. Yoon described the suspect as an Asian or Hispanic man, between fifty or sixty years old, wearing a red shirt and a gray sweater. (CAD), LOE Ex 4. (Yoon Depo. 15:15-20; 17:12-14), LOE Ex. 3. | 1. | |
| 2. | Police dispatch broadcasted that the suspect was threatening people with a knife (Deposition of Neal Browder [Browder Depo.] 57:8-9; 59:16-19; 60:6-7; 133:18-19), LOE Ex. 5. The "hot call" was assigned the highest priority possible by dispatch (Browder Depo. 132:3-6; 133:20-22), LOE Ex. 5. | 2. | |
| 3. | First on scene, Browder saw two civilians in the parking lot. (CAD), LOE Ex. 4. (Browder Depo. 61:10-11; 61:21-62:2), LOE Ex. 5. | 3. | |
| 4. | Turning into the alley, he saw the suspect and confirmed the description of the suspect with dispatch and also saw a metallic object, believed to be a knife, in suspect's hand. (Browder Depo. 62:14-17; 66:8-10; 68:5-7), LOE Ex. 5; (CAD), LOE Ex. 4 at 0010. | 4. | |
| 5. | Because this was a high risk situation, dispatch activated the Emergency Tone to limit radio traffic. (Browder Depo. 68:5-7; 73:18-19; 78:18-20; 99:13-14; 101:3-5), LOE Ex. 5; (CAD), LOE Ex. 4 at 0010. | 5. | |
| 6. | After getting out of his car and drawing his weapon, two witnesses heard Officer Browder warn the suspect, at | 6. | |

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|
| least 2 to 3 times, to drop the knife and stop before hearing the gunshot. (Yoon Depo. 19:24-20:9; 32:14-16; 37:21-24), LOE Ex. 3; Deposition of Alberto Galindo [Galindo Depo.] 15:10-16:6; 16:3-6; 16:20-22; 17:8-15; 17:19-21; 24:13-16), LOE Ex. 6; (Browder Depo. 69:20-70:2), LOE Ex. 5. A third witness said Browder used hand gestures to tell the suspect to stop. (Deposition of Andre Nelson [Nelson Depo.] 12:4-9; 41:3-7), LOE Ex. 7. | |
| 7. The suspect crossed from the left (further) side of the alley to the right side of the alley, more closely approaching Officer Browder. (Keco Video LOE Ex 1; See also Keco Video LOE Ex. 2) and Geoffrey Desmoulin Declaration Par. 5e [Desmoulin Dec. LOE Ex.19] | 7. |
| 8. The suspect continued to manipulate the metallic object in his hands. Despite commands to stop, the suspect continued forward, appearing to move with a purpose. (Browder Depo. 66:3-5); LOE Ex. 5. The failure to stop alarmed Browder because most suspects either stop and wait for directions or run when they see an officer (Browder Depo. 158:7-11) LOE Ex. 5. More so, suspect's eyes were open and he was looking directly at Officer Browder (Browder Depo. 73:2-5) LOE Ex. 5. | 8. |

| | **UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | | **PLAINTIFFS' RESPONSE AND EVIDENCE** |
|---|---|---|---|
| 9. | The video shows that the suspect begins to slow milliseconds before he was shot but nonetheless, was moving forward when shot. The frame by frame breakdown of the video shows that the suspect's "half step" occurred before Browder shot, certainly after Browder's decision to shoot. Plaintiffs' expert agrees that when shot, the suspect was moving in the direction of Browder. (Deposition of Roger Clark [Clark Depo.] 89:17-19), LOE Ex. 8 and see Desmoulin Dec. Par. 5g | 9. | |
| 10. | Officer Browder believed the suspect was as close as 10 to 15 feet when he shot. The district attorney's investigation determined the distance between Browder and Nehad was 17 feet 0 inches. (District Attorney Report, findings of DA retained expert Jeffery A. Martin, J.D. A.R.M. at page 14), LOE Ex. 9. This measurement is not disputed by Plaintiffs' expert, (Clark Depo. 20:19-23); LOE Ex. 8 and see Desmoulin Dec. Par. 5i | 10. | |
| 11. | The examination of the Keco closed-circuit TV surveillance video by expert Geoffrey Desmoulin, using the KINOVEA system, determined the video was framed at a rate of 29.97 frames per second. The KINOVEA system measured the distance between Nehad and Browder at the time of the shooting was 15 feet 4.2 inches to 17 feet Desmoulin Dec., Par. 4, 5i) Plaintiffs' expert, Clark, does not | 11. | |

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|
| challenge any of the proffered time and distance measurements, has no certificates in biomechanics, physics, ballistics, or human factors and did no independent calculations (Clark Depo. 20:19-23; 46:20-47:24; 85:3-24; 86:4-6), LOE Ex. 8. | |
| 12. Based on his training and experience, Browder feared the immediate threat posed by the suspect armed with what he believed was a knife. Browder knew that a suspect can close a 21 foot distance in less than 1.5 seconds. (Browder Depo. 139:12-14; 139:18-22; 140:2-7), LOE Ex. 5; (Desmoulin Depo 42:21-43:8; 49:18-50:5) LOE Ex. 10. | 12. |
| 13. Trained officers know reaction time must account for the time to draw a weapon, raise, aim and shoot. Browder began drawing his weapon as he was getting out of the car (Browder Depo 69:16-70:9; 95:2-9) LOE Ex. 5. | 13. |
| 14. Biomechanically, an officer requires .83 seconds to raise an unholstered weapon, point and shoot Similarly, a holstered weapon requires 1.5 seconds to unholster, raise, aim and shoot, (Desmoulin Depo. 113:21-23), LOE Ex. 10. | 14. |
| 15. At the distance of 16'10", the suspect could reach Officer Browder in 1.35-1.91 seconds. (Desmoulin Depo. 134:6-9), LOE Ex. 10. | 15. |

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|
| 16. Andre Nelson, an active-duty marine sergeant trained for military police duty, was approximately 10' from Officer Browder at the time of the shot (Nelson Depo. 10:17-19; 35:1-13), LOE Ex. 7. | 16. |
| 17. Sgt. Nelson thought the suspect had a weapon, a shiny metallic object near his chest that could be a gun (Nelson Depo. 48:16-21), LOE Ex. 7. | 17. |
| 18. Sgt. Nelson estimated the suspect was only ten steps from Officer Browder (Nelson Depo. 13:6-9), LOE Ex. 7. | 18. |
| 19. Only 5 minutes before, Andrew Yoon reported the suspect had a knife (Yoon Depo. 13:6-16; 26:4-11), LOE Ex. 3; (CAD), LOE Ex. 4). Likewise, minutes before this shooting, the doorman at a nearby establishment saw a weapon in the suspect's hand which he believed to be a knife, (Recorded Statement of Simmie Barber LOE Ex. 11) | 19. |
| 20. The suspect had convinced multiple people that he was armed with a knife that night and in the days before April 30, 2015. On April 24, 2015, Nehad threatened to stab a caller while in the Midway District. On April 25, 2015, Nehad was detained by police after a hotel security guard reported Nehad had threatened him with a knife. The weapon was in fact a pen. (San Diego Harbor Police Department Report #15-01835), LOE Ex. 12. Nehad was also | 20. |

| | **UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE AND EVIDENCE** |
|---|---|---|
| | contacted in the Midway District after it was reported that a man was threatening people with a weapon (SDPD Field Interview Report #3397242), LOE Ex. 13. | |
| 21. | Procedures governing SDPD investigations of OIS incidents meets with the standards of the International Association of Chiefs of Police (IACP), (deposition of Charles J. Key, Sr., [Key Dep.] 66:19-67:14; 141:13-142:2; 150:22-151:11; 175:3-10), LOE Ex 14. | 21. |
| 22. | SDPD protocols provide a three-step process related to officer statements: 1) the first on-site supervisor obtain from the officer a public safety statement limited to describing injuries, direction of suspects, description of suspects, 2) the subject officer does a safety walk through to help investigators retrieve evidence at the scene and, 3) the officer provides a statement for the criminal investigation and related internal affairs investigation, (Deposition of Captain Michael Hastings [Hastings Depo.] 49:5-16) LOE Ex. 15. | 22. |
| 23. | *The Safety Statement*. Minutes after the shooting, Sgt. Aguilar took a safety statement from Officer Browder and secluded Browder from any other involved officer. (Deposition of Manuel Del Toro [Del Toro Depo.] 58:20-59:3), LOE Ex. 16. | 23. |
| 24. | The scene was immediately secured by the first responding officers. All | 24. |

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|
| evidence was marked and protected until it could be collected by crime scene technicians. Deposition of Homicide Detective Sgt. Del Toro (Del Toro Depo. 64:7-17), LOE Ex. 16. | |
| 25. Homicide and district attorney investigators followed up with witness interviews. (Del Toro's depo. 15:20-16:12; 35:8-14; 58:1-8; 119:5-14), LOE Ex. 16. | 25. |
| 26. *The Safety Walk Through.* The shooting occurred just after midnight on Thursday, April 30, 2015. Browder's voluntary interview was on Tuesday, May 5, 2015. Prior to the walk through homicide investigators knew the nature of the crime, had spoken to known percipient witnesses, were securing nearby surveillance videos and cataloging the forensic evidence at the scene. At that point in time, there were no indications that Officer Browder was suspected of criminal activity (Del Toro's Depo. 63:11-64:5; 128:14-19), LOE Ex. 16; (Hasting Depo. 37:7-38:15; 48:15-49:15), LOE Ex. 15. | 26. |
| 27. Five days later (after the safety walk through), Officer Browder gave a voluntary interview (Browder Depo. 133:20-22), LOE Ex. 5. | 27. |
| 28. Browder's Voluntary Interview. SDPD allows police officers, who are not criminal suspects in an OIS investigation, to consult with their attorney. There is no nationally | 28. |

| | **UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | | **PLAINTIFFS' RESPONSE AND EVIDENCE** |
|---|---|---|---|
| | accepted standard, including IACP standards, requiring an officer to make an immediate statement without consulting with an attorney (Key Depo. 66:22-68:17; 133:25-134:13), LOE Ex. 14. | | |
| 29. | In circumstances where the officer is not suspected of a crime the timing of a voluntary statement can be scheduled in a coordinated effort by the police agency and the officer and his attorney, (Key Dep. 138:12-23), LOE Ex. 14 | 29. | |
| 30. | Studies conclude that an immediate statement may be influenced by the trauma and stress of the event. The IACP Model Policy notes that this stress can cause "time and space distortions, confusion, hearing and visual distortions associated with recalling details of the incident, as well as emotional impairment during questioning." (Key Dep. 140:4-141:7; 141:13-142:2), LOE Ex. 14. | 30. | |
| 31. | Officer Browder's use of force was investigated by the SDPD Homicide Unit, the internal affairs department and the Citizens Review Board, (Deposition of Lt. Marshall White [White Depo] 30:5-7; 34:16-18; 39:4-6; 31:20-25; 36:20-23; 39:6-8; 84:13-17), LOE Ex. 17. | 31. | |
| 32. | A separate investigation was conducted by the San Diego County District Attorney, who enlisted an outside use of force expert, Jeffrey A. Martin, to | 32. | |

9

| | UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|---|---|
| | analyze the incident (White Depo 85:16-20), LOE Ex. 17. | | |
| 33. | The District Attorney concluded that Officer Browder acted reasonably and bears no criminal liability. Similarly, the Civil Rights Division of U.S. Department of Justice's investigation there was no violation of any federal civil rights statutes (White Dep. 56:6 – 57:14, 85:16-20), LOE Ex. 17 and (Letter from the Department of Justice, LOE Ex. 18.) | 33. | |
| 34. | In response to discovery seeking specific agencies with OIS investigation policy that are superior to San Diego Police Dept. Plaintiffs could not identify any such national standard and only provide two names, the Los Angeles Police Department and Los Angeles Sheriff's Department. (Response to Special Interrogatory, Set One). | 34. | |
| 35. | Mr. Clark's police career began in 1965, as a jail deputy for the Los Angeles County Sheriff's Department. In 1972, Mr. Clark was given a collateral assignment for patrol school attached to the academy. In 1973 he was promoted to sergeant where his duties included communications, patrol and emergency operations bureau assignments. In 1978, he was promoted to lieutenant and returned to the county jails. In 1984, he was assigned to a unit whose mission was to capture wanted | 35. | |

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|
| suspects. (Clark Depo 49:24-50:6), LOE Ex. 8. | |
| 36. Clark offers that the surveillance often focused on homicide suspects, therefore he is qualified to offer opinions regarding homicide investigations. (Clark Depo 49:16-18), LOE Ex. 8. Likewise, Mr. Clark does not have the requisite experience as an internal affairs investigator to qualify him to offer opinions on internal affairs investigations. | 36. |
| 37. Mr. Clark spent 20 hours total on this matter, including his written report, review of deposition transcripts, discovery responses, and the 20 OIS investigations including the 20 related internal affairs investigations. The OIS and IA files alone included over 15,000 pages of materials plus audio and video recordings. Mr. Clark's Rule 26 report provides less than 2 pages of analysis and opinion related to the entity liability the related supervisory liability against, Shelley Zimmerman, as Chief of Police SDPD (Monell claims). Mr. Clark cannot offer any backup analysis besides his report. (Clark Depo. 159: 3-10), LOE Ex 8; (Clark report pgs. 18), LOE Ex., | 37. |
| 38. Mr. Clark opines that Browder's pre-shoot tactics were negligent. Clark's opinions do not examine whether or not Officer Browder had a reasonable belief of imminent serious bodily injury | 38. |

11

| | **UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE AND EVIDENCE** |
|---|---|---|
| | or death at the time he used deadly force. He concludes that despite the limited time (Browder only had five seconds before Nehad was 17 feet in front of him) the trier of fact should presume that Officer Browder "had all the time he wanted to take." (Clark Dep. 99:22-23; 100:3-4), LOE Ex. 8. | |
| 39. | Mr. Clark suggests that running behind the patrol vehicle would have been a better tactic (Clark Dep. 105:10-15), LOE Ex. 8; or retreating towards the witnesses using the landscape as a shield (Clark Dep. 106:2-3), LOE Ex. 8. These opinions fail to dispel the immediacy of the dangerous threat and only speak to negligence. | 39. |
| 40. | Plaintiffs' expert only offers the legal conclusion that SDPD "has a pattern and practice of using lethal force in situations in which such force is not warranted," based upon his 20 minutes reviewing each the 20 OIS files (on average 700 pages per file) (Clark Depo. 159:16:23), LOE Ex. 8. | 40. |
| 41. | Mr. Clark does not identify the causation between the character of the OIS investigations and the use of force. Clark does not indict the number of witnesses the SDPD interviewed, the witness interview process, nor identify inconsistencies between forensic evidence, witness statements, and other evidence within the OIS files (Clark Depo. 61:4-10, 137:8-12; 158:18-23; | 41. |

| | UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|---|---|
| | 159:8-15), LOE Ex. 8. LOE Ex. 8. | | |
| 42. | Clark's focus is on negligent pre-shoot tactics of the officers (Clark Depo. 138:11-2), | 42. | |
| 43. | Clark does not refer to IACP guidelines or other national standards regarding OIS investigations is support of claims of deficient investigations (*Monell* and supervisory liability) (Clark Depo. 145:4-12), LOE Ex. 8. | 43. | |
| 44. | Clark concludes that any officer who incorrectly perceived a weapon in a suspects hands should have avoided shooting (Clark Depo. 147:20-23), LOE Ex. 8. | 44. | |
| 45. | Clark concludes that if the suspect was armed with a knife, all officer involved shootings are not necessary (Clark Depo. 150:4-9), LOE Ex. 8. | 45. | |
| 46. | The video evidence of the scene shows the time and distance "physics" underlying Officer Browder's use of force ("Keco" videos) LOE Ex. 1 &2). | 46. | |
| 47. | The frame rate of the video (29.97 frames per second) ("Keco" videos) LOE Ex. 1 and 2; Desmoulin Dec. Par. 4 | 47. | |
| 48. | the location of Nehad at the time Browder makes a conscious decision to raise, aim and fire his weapon was between 16'4" and 18'0' Desmoulin Dec. Par. 5h | 48. | |

| | UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|---|---|
| 49. | the time it takes Browder to make this conscious decision and act upon it (.83 seconds) Desmoulin Dec. Par 5m | 49. | |
| 50. | the location of Browder and Nehad at the time of the muzzle flash, (15' 4" to 17' ) Desmoulin Dec. Par. 5i | 50. | |
| 51. | The 23:10:15 video time stamp shows Officer Browder arrives and seconds later a witness points Browder further down the alley ("Keco" videos) LOE Ex.  at 23:10:19, Browder pulls further into the alley and the suspect appears in the video, moving towards Browder from a distance of approximately _feet. At 23:10:28, 10 seconds after Browder pulls further into the alley, the suspect has moved to within 19', as close as 15'2" inches when the shot is fired. ("Keco" videos) LOE Ex 1 and 2. Desmoulin Dec. Par. 5c | 51. | |
| 52. | Plaintiffs' police tactics expert does not contest the physics – the specific time and distance factors at issue (Clark Depo 19:12-24), LOE Ex. 8. | 52. | |
| 53. | Clark does not fault the City's investigatory process. Clark Depo. 61:4-10, 137:8-12. LOE Ex. 8. | 53. | |
| 54. | The evidence does not support a failure of the homicide or internal affairs investigators to identify evidentiary inconsistencies or a failure to gather forensic evidence. Clark Depo. 158:18-23, 159:8-15 LOE Ex.8 | 54. | |

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|
| 55. a. The Keco video shows Officer BROWDER's police car pulling into the alleyway at the time stamp of 23:09:55. Desmoulin Decl. Par. 5a | 55. |
| 56. b. The Keco video shows a civilian approaching Officer BROWDER's car at the time stamp of 23:10:10 to 23:10:16. Desmoulin Decl. Par. 5b | 56. |
| 57. c. The Keco video, after the civilian approached Officer BROWDER's Vehicle, shows BROWDER moving his police car forward approximately four (4) feet at a time stamp from 23:10:15 to 23:10:19. Desmoulin Decl. Par. 5c | 57. |
| 58. d. At the time the Keco video shows Officer BROWDER moving his police car forward, the suspect is seen advancing towards BROWDER's police car from approximately 50' 7" (see paragraph 7). Desmoulin Decl. Par. 5d | 58. |
| 59. e. The suspect moves at constant rate of speed of 1.63 – 2.07 mph (2.39 – 3.04 ft/s) towards Officer BROWDER, crossing from the west right side of the alley to the east left side of the alley through the time at which Officer BROWDER made the decision to fire his weapon (see paragraph 8). Desmoulin Decl. Par. 5e | 59. |
| 60. f. The time for BROWDER to raise his un-holstered gun, aim and shoot is .83 seconds (see paragraph 9). | 60. |

15

1462004                                                15CV1386 WQH (NLS)

| | UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | | PLAINTIFFS' RESPONSE AND EVIDENCE |
|---|---|---|---|
| | Desmoulin Decl. Par. 5f | | |
| 61. | g. Officer Browder's decision to shoot occurred while the suspect was moving toward him in a constant rate of speed, before the suspect slowed milliseconds before the shot (see paragraph 10). Desmoulin Decl. Par. 5g | 61. | |
| 62. | h. The distance between Officer BROWDER and the suspect at the time Browder made his decision to shoot was approximately between 16'4" and 18'0" (see paragraph 11). Desmoulin Decl. Par. 5h | 62. | |
| 63. | i. The suspect advanced towards Officer BROWDER approximately 12 inches from the distance of 16'4" and 18'0" to a distance of 15'4" to 17'0" during the .83 seconds while Browder effectuated his decision to fire his weapon (the District Attorney's investigation and expert put the distance between Officer Browder in the suspect at 17 at the time of the shooting) (see paragraph 12). Desmoulin Decl. Par. 5i | 63. | |
| 64. | j. The Keco video shows that the time from Officer BROWDER getting out of his car to firing his weapon was 4.79 seconds. Desmoulin Decl. Par. 5j | 64. | |
| 65. | k. When Officer BROWDER exits his vehicle, he is approximately 27'9" away from Mr. NEHAD (see paragraph 13). Desmoulin Decl. Par. 5k | 65. | |

16

| | **UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | | **PLAINTIFFS' RESPONSE AND EVIDENCE** |
|---|---|---|---|
| 66. | l. | The time stamped Keco video shows that from the time Officer BROWDER pulled into the alley to the time he fired his weapon was approximately 33 seconds. Desmoulin Decl. Par. 5l | 66. |
| 67. | m. | Once BROWDER made the decision to shoot, the time for BROWDER to raise his un-holstered weapon, aim and shoot is .83 seconds. The average time for an officer to remove a gun from his holster, aim and shoot is 1.5 seconds (see paragraph 14). Desmoulin Decl. Par. 5m | 67. |
| 68. | n. | The Keco video shows the suspect advancing towards BROWDER from 50' 4" feet (see paragraph 15). Desmoulin Decl. Par. 5n | 68. |

Dated:  March 15, 2017          MARA W. ELLIOTT, City Attorney


By  */s/ John Riley*
      John Riley
      Chief Deputy City Attorney

Attorneys for Defendants SHELLEY ZIMMERMAN, NEAL N. BROWDER, CITY OF SAN DIEGO